The Montgomery County Grand Jury indicted Calloway Holyfield with the unlawful killing of Bertha Mae Gaines, "by shooting her with a rifle."
He entered a plea of not guilty and not guilty by reason of insanity. After a two-day trial he was convicted of murder in the second degree and sentenced to ten years imprisonment in the penitentiary.
On May 6, 1976, after returning home from work, the appellant was advised by his son that his sister-in-law, Bertha Mae Gaines, had called earlier that evening to speak with him. Appellant was told that his sister-in-law had left a message asking that he either call or come by her house.
The appellant, at that point, called his sister-in-law's home but no one answered. The appellant also had learned that his wife, Rebecca Holyfield, was visiting her sister, Bertha Mae Gaines, at that time. After making the telephone call he left his home and drove to Bertha Mae Gaines' house at 865 Sayre Street in Montgomery, Alabama.
Upon approaching the house, he noticed the lights were on and that the front door was open. He did not see anyone at the time, and so he returned to his home and once again called his sister-in-law.
The appellant again received no answer and so he drove back to his sister-in-law's house. There he saw his wife, his sister-in-law, Bertha Mae Gaines, and his mother-in-law. He informed his sister-in-law that he had received a message that she had wanted to see him. Bertha Mae invited him into the house. As he walked onto the porch he noticed his brother-in-law, Nelson Gaines, lying on a cot. He also noticed the odor of alcohol on his breath and a wine bottle near the cot.
According to Nelson Gaines, the appellant entered the house and began looking for his wife. This made Bertha Mae Gaines very angry and she told the appellant to leave, then struck him with an ashtray. He said that Holyfield then pushed Bertha Mae to the floor. He said he walked over and told them, "This ain't going to happen here. You're going to get out of here with that," and then he escorted appellant to the front door. Gaines said shortly thereafter he looked outside and saw the defendant, armed with a rifle, standing by his car. After that he heard a shot and caught his wife as she was falling to the floor.
Holyfield stated that as he entered the house Bertha Mae started yelling at him. An argument between Bertha Mae and her husband ensued and, as appellant proceeded to leave, Bertha Mae told him that he was *Page 110 
not going anywhere. Holyfield testified that it was then that she hit him several times with an ashtray.
According to Holyfield, he asked Nelson Gaines to get Bertha Mae off him and at that point Nelson Gaines grabbed Holyfield. Holyfield recalled that when he finally got loose he went out the front door. He said that he dropped the keys to his car due to the loss of blood from his head injury. He remembered as he bent over to pick up the keys he noticed his sister-in-law and brother-in-law coming to the front door. He said he became frightened and reached in the back of his car for his rifle. As he threw the rifle up it fired. Holyfield stated that he left the scene momentarily, returned, got into his automobile, and drove home.
On his return home he notified his daughter of what had happened and she called the police.
 I
In the trial of the case, the State called as its first witness, the defendant's wife, Rebecca Holyfield. On taking the stand she invoked her privilege and did not testify.
Appellant insists that it was error to allow the prosecution to comment on Mrs. Holyfield's failure to testify after she had indicated that she desired not to do so. Such comments came during the State's closing argument when the prosecutor remarked:
 "Now I briefly told you the State would show, the evidence would show that four persons who were likely witnesses to this case; the deceased who could not speak. Others had to speak for her. Rebecca Holyfield, who is the wife of the defendant; Nelson Gaines, who was the husband of the deceased; and, of course, the Defendant. Those are the only witnesses to this case, ladies and gentlemen."
The prosecution continued in its closing argument and said:
 ". . . And there were only three witnesses out there who really know what happened. If you want to get to the truth, Rebecca Gaines [sic]
. . . . .
"MR. MANDELL: Judge, Gaines is not her last —
 "MR. PRICE: Rebecca Holyfield, I beg your pardon. Nelson Gaines.
 "MR. MANDELL: I object to that, any reference to Rebecca Gaines.
"THE COURT: Oh, no he has the right to argue that.
"MR. MANDELL: We except.
 "MR. PRICE: Four witnesses, four witnesses; Bertha Gaines, dead, Rebecca Gaines [sic], Nelson Gaines, and Calloway Holyfield. To get the truth of the matter, those are your three witnesses that you have. Think about the witnesses that you have."
At common law the spouse of a party having an interest in either a civil or criminal case, was incompetent to testify for or against his or her mate. The majority of jurisdictions in the United States, however, have altered this rule and have made a spouse a competent witness in both civil and criminal matters. Nonetheless, he or she still has the privilege not to testify if he or she so elects. See McElroy, Third Edition, § 103.01 (2).
In Alabama, the statute changing the common law rule as it pertains to criminal cases reads:
 "The husband and wife may testify either for or against each other in criminal cases, but shall not be compelled so to do." T. 15, § 311, Code of Alabama 1940, Recompiled 1958, now Code of Alabama, 1975, § 12-21-227.
This section allows the wife, if she so desires, to testify against her husband. McCoy v. State, 221 Ala. 466, 129 So. 21. It also provides that either husband or wife are competent witnesses to testify for or against the other in criminal cases, Jay v. State, 15 Ala. App. 255, 73 So. 137, notwithstanding the objection of the other against whom the spouse has voluntarily agreed to testify. McCoy v. State, supra.
The husband or wife has the right to elect to testify. Until that election is made *Page 111 
he or she is not a competent witness. DeBardelaben v. State,16 Ala. App. 367, 77 So. 979.
Under the Alabama statute, in that the defendant has no right to prevent his spouse from testifying against him, it would seem that the mere calling of a spouse as a witness for the prosecution could not be considered misconduct even if the spouse, after taking the stand, elected not to testify by exercising the marital privilege.
However, McElroy's Alabama Evidence, Third Edition, 191.01 (7), states:
 "A party may not comment upon his opponent's failure to call a specified person as a witness where it reasonably appears, that if such person had been sworn as a witness and asked about his knowledge of material facts, he could have claimed successfully a privilege not to testify about such facts."
This court, in Kabase v. State, 31 Ala. App. 77, 12 So.2d 758, held that it was error for the prosecution to comment on the failure of the defendant to call a co-defendant as a witness in his own behalf. The court distinguished Kabase, supra, fromWaller v. State, 242 Ala. 1, 4 So.2d 911, where the court held:
 ". . . if a party has a witness possessing peculiar knowledge of the transaction, and [is] supposed to be favorable to him, and fails to produce such witness when he has the means of doing so, this, in the absence of all explanation, is a ground of suspicion against him that such better informed testimony would make against him."
In distinguishing Kabase, supra, from the Waller case, the fact where privilege exists as to the matter of testifying, the principle is not unavailability, but privilege. Under the circumstances of Kabase, had the co-defendant, who was not on trial, declined to testify because of his privilege against self-incrimination, his refusal might have been construed by the jury to the defendant's disadvantage. It is for that reason that it was impermissible to comment on the failure of the co-defendant to testify and the failure of the defendant on trial to call him.
It would seem that the same principle would apply in the circumstance where the defendant has failed to call a spouse because she had, or would assert their husband-wife privilege.
In Robinson v. State, 243 Ala. 684, 11 So.2d 732, the prosecuting attorney commented on the fact that the defendant had not called his wife to substantiate an alibi, and, after the appellant's objection, the prosecutor made the further remark that the State did subpoena the wife but under Alabama law she could not be compelled to testify. The Supreme Court of Alabama said that, because no objection was interposed to the last statement and the other statements were not such as to require the trial court on its own motion to enter a mistrial, it required not only an objection by the defendant but a request for additional curative measures.
In U.S. v. Pariente, 558 F.2d 1186, a Fifth Circuit Court of Appeals case, decided September 8, 1977, the court held that in a prosecution for transporting aliens, the government counsel's comment on the defendant's failure to call his wife as a witness, along with the trial court's instruction that the comment was valid, was error. The court recognized in its decision that a comment by the prosecution on the failure of a defendant's spouse to testify, when accompanied by an instruction to the jury not to consider the remark, would not be error, especially in the view of the fact where the evidence of guilt was substantial and the fairness of the trial is notaffected thereby. United States v. Seay, 432 F.2d 395. The court in U.S. v. Pariente, supra, went on to say that in SanFratello v. United States, 340 F.2d 560, there was reversible error in the action of a prosecutor in calling defendant's spouse to the stand whereby she was forced to exercise her privilege against self-incrimination. The court also said that, it amounted to an exercise of the marital privilege and notwithstanding an instruction by the court to the jury not to draw any unfavorable inferences, it was still prejudicial. *Page 112 
Under our statute, it is the witness-spouse's privilege, and the defendant-spouse can in no way compel or prevent her from exercising such privilege.
The defendant-spouse cannot as a matter of law require her to testify in his behalf nor can the State require her to testify against him.
This statute dealing with marital privilege is drawn in such a way to prevent the coercion by others which could directly or indirectly push the husband or wife into the witness box.
If for any reason the privileged spouse declines to testify for or against the other, that decision is final and the motives should not be questioned in a manner that would inure to the detriment of the defendant-spouse.
If a failure of the witness-spouse to testify is to be construed as testimony or as a circumstance against the defendant-spouse, the privilege and the option to testify would be annulled. Under these circumstances the defendant-spouse would in all cases run the hazard of being convicted on a constrained, implied confession or admission, or to make explanations for her failure to testify, which might involve aspects of domestic privacy.
When comment is made on an exercise of the marital privilege, the jury can infer that the defendant had something to hide, when in fact he can neither compel nor prevent his spouse from exercising that privilege. Under these circumstances, a jury could conclude that the defendant was preventing his spouse from testifying for the purpose of suppressing evidence.
In the case at bar, when the prosecutor argued to the jury that there were only four people who knew what transpired at the scene of the shooting and among them was the defendant's wife, this clearly implied that, had the defendant's wife testified, her testimony would have been very damaging to the defendant.
It is not possible to say that the defendant was not prejudiced under these circumstances, especially in view of the fact that the defendant and his wife were having marital trouble, and there was some testimony that a divorce was being sought.
The comments by the district attorney concerning the wife's failure to testify were highly prejudicial and should not have been allowed. Therefore, in view of this fact, the judgment of the circuit court is due to be reversed and the cause remanded for a new trial.
In brief, counsel for the appellant has asserted other points of error. We do not believe that a discussion of those contentions is necessary, especially in view of the action this court has taken today.
REVERSED AND REMANDED.
All the Judges concur.