The defendant was indicted for the first degree murder of Alvin Abrams. A jury convicted him of murder in the second degree and fixed his punishment at twenty years' imprisonment.
For approximately one year, seventy-one year old Alvin Abrams and the defendant had been doing "a lot" of drinking together. On one occasion three months before his death, Abrams and the defendant were drinking, got into an argument and had to be separated.
Around two o'clock on the afternoon of February 20, 1979, Yellow Cab driver Michael Sergeant took Abrams to the defendant's home. Sergeant stated that, before he could leave, Abrams, accompanied by the defendant, returned to his cab and asked him to get a quart of Old Mr. Boston Whiskey.
About four o'clock that afternoon, Yellow Cab driver Virgle Sims delivered the whiskey to Abrams at the defendant's house. Sims testified that he saw the defendant, the defendant's wife, and Abrams in the defendant's house when he delivered the whiskey. They were drinking.
Mrs. Wilma Black was the defendant's neighbor. She testified that at 7:30 on the night of February 20 the defendant knocked on her back door and said, "I've killed a man, and I think it's Bob." "Bob" referred to Mrs. Black's son-in-law, Bob Ostrowski.
Mrs. Black and her daughter, Linda Ostrowski, accompanied the defendant to his house. On the living room floor lay Alvin Abrams, the right side of his face horribly mutilated from a shotgun blast. The body was cold and the blood had begun to coagulate.
The police arrived and a shotgun was found in a bedroom closet. Several witnesses for the State testified that, in their opinion, this weapon had recently been fired.
Expert testimony revealed that Abrams died of a shotgun wound to his head. An expert concluded that the shotgun was within three feet of Abrams' head when the weapon was fired. Abrams had type "O" blood; the defendant, type "A". Drops of type "A" blood were found throughout the house. Dried blood and tissue were removed from the hair of the defendant's wife. An expert concluded that this matter could be either type "A" or type "O" as it contained properties of both types although he could not determine if it were one type to the exclusion of the other. *Page 1054 
The defendant gave an exculpatory statement to Detective Glenn Talley and Sheriff Jerry Studdard. In the statement, the defendant claimed that he had not seen Abrams for two or three weeks, that no Yellow Cab had come to his house that day, and that his shotgun had not been fired in a year. He stated that he and his wife had gone to bed about eight o'clock that night and that he was later awakened by a noise. He went into the living room and found a body but did not recognize it until his wife told him who it was. At trial, the defendant's testimony was similar to the substance of this statement.
 I
Initially, it is argued that the conviction is due to be reversed for lack of a judgment entry adjudicating the defendant guilty.
The judgment entry signed by the trial judge and appearing in the record recites:
 "The Court in accordance with the verdict of the jury, `We, the jury, find the defendant guilty of Murder in the Second Degree and fix his punishment at 20 years, 0 days imprisonment in the penitentiary of the State of Alabama' then by the Court adjudged guilty accordingly of Murder in the Second Degree as charged in the indictment and the defendant's punishment is fixed at 20 years' imprisonment."
"One of the requirements still obtaining and necessary to a valid judgment is that there must be a solemn adjudication of guilt." Blakely v. State, 28 Ala. App. 574, 190 So. 102 (1939). This "solemn adjudication" need not follow any specific pattern "but there must be some words to show that there has been a judgment upon the verdict." Wright v. State, 103 Ala. 95, 96,15 So. 506, 507 (1893). While the "judgment entry in all criminal cases where there is conviction should recite in express words that the defendant is adjudged guilty by the court as found by the jury," the language employed in the court's minute entry is to be given a liberal construction.Carmichael v. State, 213 Ala. 264, 104 So. 638 (1925); Driggersv. State, 123 Ala. 46, 48-49, 26 So. 512, 513 (1898). Thus a judgment entry is not "insufficient or void" because of the omission of words which would merely have made the judgment "fuller and more complete" had they been included. Wilkinson v.State, 106 Ala. 23, 28, 17 So. 458 (1894). The omission in the minute entry of the judgment of a formal adjudication of the defendant's guilt upon the verdict rendered will not render the judgment entry insufficient where it recites a judgment of sentence by the court in accordance with the verdict. Talbertv. State, 140 Ala. 96, 99, 37 So. 78 (1903).
Certainly, in this case, the judgment entry could be "more complete" but it is not so insufficient as to be void. The substance and meaning of the judgment entry are definite and sufficient to show that the defendant was adjudged guilty by the court as found by the jury. This is all that is required.
 II
The defendant maintains that the trial court committed reversible error by allowing the prosecutor in his closing argument to the jury to draw an adverse inference from the defendant's failure to call his wife to testify as a witness.
From the record:
 "MR. YUNG [Assistant Attorney General] (resumed): Now, one of the most important things in this case — and I am about through — is not what you heard but what you did not hear. The most important thing that you did not hear is the testimony of Mrs. Billingsley.
 "MR. WOOD [Defense Counsel]: We object to that, Your Honor.
 "THE COURT: This will not be charged against your time.
 "Set out in Section 191.01, sub. 4, sub. C, a comment may be made on the parties' failure to call a member of his family. They cite three cases, Barnes versus State, Waller versus State and Davis versus State.
"Okay. Now you may make the comment. *Page 1055 
 "MR. YUNG (resumed): Where was Mrs. Billingsley? Now, the State can't call her. The law is that the State can't call —
 "MR. WOOD: I object to that, Your Honor. That is an incorrect statement of law. They can call that woman as a witness.
"MR. YUNG: That is not the law.
 "THE COURT: I'll instruct the jury that the statement made by Mr. Wood is an incorrect statement of the law.
"MR. WOOD: We except, if it please the Court.
 "MR. YUNG (resumed): We can't call his wife up here and make her testify on this. But he can call her to back up his testimony if his testimony is true. He could call her if in fact she were in bed asleep with him like he tells you. He could call her to back him up if in fact he woke up and went in there and found the body and then woke her up and told her to go look. He could call her to testify under oath if in fact she then went in there and looked and said, `It looks like Alvin Abrams to me.' He could call her to testify that he told her to call the law and she tried to and that she then called Ostrowski and Mrs. Black over there if that were true.
 "We can't; he could. And he didn't do it. "But on the other hand, if she told the sheriff, like the sheriff asked him on that tape, that she was asleep on the couch, not in the bed with him, that she didn't know anything about it until the police came, then the last thing in the world, the last thing in the world that he would do is call that woman, his wife, in here because we would then be able to cross examine her about what she told the sheriff. We would then be able to play the tape for you that the sheriff made when he talked to her. That's the last thing he could afford to do.
 "That is why the only other witness in that house didn't testify, because we can't make her and the last thing he wanted was for her to be in here.
 "Where was Mrs. Billingsley? I think the answer to that is clear."
The basic rule is:
 "Generally, if it happens both (1) that the evidence warrants a finding that a party, at the time of the trial, has one and only one member of his family who has knowledge of a material matter and (2) that such family member is not called as a witness, the opponent may comment on such party's failure to call that family member as a witness." C. Gamble, McElroy's Alabama Evidence, § 191.01 (4)(b) (3rd ed. 1977).
This rule is complicated by the fact that the wife is aprivileged, but not disqualified, family member.
Despite language in DeBardeleben v. State, 16 Ala. App. 367,77 So. 979 (1918)[1] and Holyfield v. State, 365 So.2d 108
(Ala.Cr.App.), cert. denied, 365 So.2d 112 (Ala. 1978)[2], it is clear that a husband or wife is competent, but not compellable, to give testimony either for or against his or her spouse in a criminal proceeding. Jay v. State, 15 Ala. App. 255, 73 So. 137
(1916). By statute the spouse-witness is competent to testify. Alabama Code 1975, Section 12-21-227. The privilege of refusing to testify belongs only to the spouse-witness. Trammel v.United States, ___ U.S. ___, 100 S.Ct. 906, 63 L.Ed.2d 186
(1980). Competency and privilege are not interchangeable terms and must not be confused. McElroy, § 103.01 (2) and (3) (3rd ed. 1977). *Page 1056 
 "Under our statute, it is the witness-spouse's privilege, and the defendant-spouse can in no way compel or prevent her from exercising such privilege.
 "The defendant-spouse cannot as a matter of law require her to testify in his behalf nor can the State require her to testify against him." Holyfield, 365 So.2d at 112.
This distinction between competency and privilege must be made because, if a witness-spouse were incompetent to testify until that spouse elected to testify, then any comment upon the failure of the witness-spouse to testify would be error.
Clearly, the prosecutor may not comment on the refusal of a spouse-witness to testify or upon the exercise of a privilege not to testify. Holyfield, 365 So.2d at 112. However, in this case, the record does not show that any privilege was exercised or invoked and the defendant's wife was not called as a witness by either party. The reason for the failure of the wife to testify does not appear.
The issue raised by the defendant was addressed by this Court in Hurst v. State, 54 Ala. App. 254, 265, 307 So.2d 62 (1974), cert. denied, 293 Ala. 548, 307 So.2d 73 (1975). There the prosecutor commented on the failure of the defendant to call his wife to testify. This Court found no error in the comment.
 "It is the general rule that one party may not comment unfavorably on the other party's failure to produce a witness supposedly favorable to that party if the witness is equally available to both sides. We are not of the opinion that the doctrine of equal availability can be applied to close-blood relationship or the relationship of husband and wife. Morgan v. State, 49 Ala. App. 330, 272 So.2d 256; Commonwealth v. Spencer, 212 Mass. 438, 99 N.E. 266; 16 C.J. 904, Section 2250; 14 Am.Jur. 875, Section 151." Hurst v. State, 54 Ala. App. at 265-266, 307 So.2d at 73.
There appears to be a conflict of authority in this area. See annotations at 116 A.L.R. 1170 (1938) and 5 A.L.R.2d 928 (1949). McElroy, citing cases where it was held error to comment on the defendant's failure to call a codefendant as a witness, states:
 "A party may not comment upon his opponent's failure to call a specified person as a witness where it reasonably appears that, if such person had been sworn as a witness and asked about his knowledge of material facts, he could have claimed successfully a privilege not to testify about such facts." McElroy, § 191.01 (6).
We note this apparent conflict in light of the shadow of suspicion the Alabama Supreme Court has cast over Hurst.[3]
However, we think that this apparent conflict was resolved inSpencer, which was cited as authority in Hurst. In Spencer, supra, the wife-witness was also competent but not compellable, and was not called to testify for either party.
 "As to their testimony against each other either may testify, but shall not be compelled so to do in a criminal proceeding against the other. The privilege is that of the spouse called and not of the defendant. In the case of the defendant in a criminal suit the question whether he will testify is decided by him alone. In only this last case is his failure to produce the evidence not to be taken against him. In all other proceedings and as to all witnesses except himself in a criminal proceeding against him, the defendant is left to the general principles of law as to what inference may be drawn against him for his failure to produce evidence in his favor. In this respect our statute differs from those of some states which expressly provide that the failure of one spouse to produce the other shall not in a criminal case be taken against the defendant. See for instance St.Mo. 1899, § 2638; State v. Weaver, 165 Mo. 1, *Page 1057 65 S.W. 308, 88 Am.St.Rep. 406; State v. Taylor, 57 W. Va. 228, 50 S.E. 247. See also Wyman on Ev. § 488 (note).
 "One of these general principles is that, where the circumstances are strong against the defendant and it becomes a question what weight shall be given to them in view of any conceivable explanation of them, if there be witnesses who could furnish any such explanation and they are peculiarly under the influence of the defendant or peculiarly related in interest to him, then his failure to produce any such witness is a proper subject for comment unfavorable to him. Com. v. Webster, 5 Cush. 295, 316, 52 Am.Dec. 711; Com. v. Finnerty, 148 Mass. 162, 19 N.E. 215. A failure to explain what can be reasonably explained may be taken as evidence that the truth would not help the defendant. The jury are to judge whether the defendant has done what he could to put the evidence before them and what weight should be given to his failure. There can be no doubt in the present case that the failure of the defendant to produce his wife is within the rule, unless it is excluded by the fact that if called she might have refused to testify. Com. v. Galligan, 156 Mass. 270, 30 N.E. 1142.
 "The defendant always may relieve himself from any unfavorable inference by showing that by reason of the sickness or absence of the desired witness or from any other cause he has been unable to produce him; but he is to be held to reasonable effort to produce the witness, and in the absence of any evidence of such effort the rule applies. In the present case the wife was in court during the whole or a part of the trial, and ministered to the wants of the defendant. Apparently he had ample time to converse with her. Whether or not she, if called, would testify was a matter entirely personal to her. The privilege to refuse was hers, not his. If he had called her and she had refused to testify, then no inference could have been drawn against him. It then would have appeared that he had done all he could do to call her and avail himself of her evidence. But he did not call her. It does not appear that she refused to take the stand, or that the defendant had made any attempt whatever to get her testimony. This is not a case where the defendant has the right to introduce evidence under a law saying that the failure to produce it shall not be taken against him, as in the case of his own right to testify, but is a case where the witness is competent and, if called, may testify or not as she pleases; and there is nothing to show her unwillingness. Her failure to testify is as consistent with the theory that he did not desire her to testify as with the theory that she was unwilling so to do. It cannot be assumed in his favor that her absence from the witness stand was due to her refusal to testify. If he desired to be relieved from the operation of the rule as to the production of his wife as a witness he should have shown that he had made an effort to that end. So far as respects our statute, the rule that the defendant should make reasonable effort to explain by the aid of witnesses peculiarly related to him is as applicable when the wife is the needed witness as where any other person is. Com. v. Galligan, ubi supra." Spencer, 99 N.E. at 271-272.
See also Commonwealth v. Noxon, 319 Mass. 495, 66 N.E.2d 814,838-839 (1946). Under this reasoning the prosecutor's comment on the defendant's failure to call his wife to testify was proper since the defendant did not show any reason for her absence and there was no comment on any privilege which had been invoked. See also Slater v. State, 43 Ala. App. 513,194 So.2d 93 (1967), where it was held that, in order to prevent the defense from commenting on the State's failure to call a witness who was more available to the State but who was claimed by the State to be suffering from a mental condition, the mental condition should be shown by evidence so that the defendant could have an opportunity to rebut it.
 III
The defendant also maintains that the trial court improperly instructed the *Page 1058 
jury on the correctness of the prosecutor's remarks that the State could not call the wife of the defendant as a witness.
Initially, it is noted that defense counsel's objection interrupted the prosecutor's sentence. While the State can call the defendant's wife to the witness stand it cannot make her testify. Alabama Code 1975, Section 12-21-227. The objected to portion of argument must be construed in its context within the prosecutor's argument.
No further or other objection was made on this matter. No clarifying instructions were submitted or requested. There was no motion for a new trial. Trial counsel, at the time of objection, made no request that the jury be instructed on what the correct law was.
The issue of the defendant's wife's testimony was presented to the trial judge before trial, during trial, and in closing argument.
Before trial, defense counsel filed a "Motion in Limine" requesting that the trial court order the prosecutor to "refrain from eliciting" testimony regarding:
 "Any statement or utterance by the defendant's wife, Mildred Billingsley, because any such statement or utterance is hearsay, irrelevant, immaterial, and would be unduly prejudicial."
The record contains no ruling on this motion.
During the prosecutor's cross examination of the defendant, the following occurred:
 "Q. Now, your wife is going to come in here and back you up on that testimony?
"MR. LOVE [Defense Counsel]: Your Honor —
"THE COURT: Sustained.
 "MR. VALESKA [Assistant Attorney General]: Judge, we have a case on it.
"THE COURT: Give me the case, if you have one.
"[Discussion held off record.]"
Following the off the record discussion, the prosecutor did not pursue the objected-to line of questioning.
From the record, it is obvious that the trial judge possessed a greater knowledge of the facts surrounding the defendant's failure to call his wife as a witness than has been presented to this Court. The wife's actual availability to either or both sides simply does not appear in the record. "In view of this state of the record we are unwilling to say that the Court's ruling prejudiced the defendant." Thompson v. State,352 So.2d 37, 39 (Ala.Cr.App. 1977).
During the State's case it was shown that blood and tissue which could have come from the defendant or the deceased were found in the wife's hair; that the wife was present with the defendant and Abrams shortly before the killing and was present when the police arrived.
In his defense, the defendant denied seeing Abrams until he discovered him dead on his living room floor. The defendant testified that he and his wife had been drinking and had gone to bed together around 1:00 in the afternoon. When the defendant awoke, his wife was still sleeping. After the defendant discovered the body he awoke his wife who identified the corpse. Allegedly the defendant told his wife to call the police. He testified that his wife went to the back door and called for the neighbors. The defendant also maintained that the blood on the couch belonged to his wife.
The defendant's testimony was in seemingly unresolvable conflict with the State's evidence. The defendant denied telling Mrs. Black that he had killed someone. He denied seeing either the deceased or a Yellow Cab at his house although witnesses placed both in the defendant's presence. The defendant's trial testimony was even in conflict with a statement he had given the Sheriff after the homicide. In conclusion, it appears that, besides the defendant himself, the defendant's wife was the only witness who could dispute the State's formidable case of circumstantial evidence against the defendant. No doubt the jury was left bewildered by Mrs. Billingsley's failure to testify and the defendant's failure to explain her absence. *Page 1059 
Jurors are not trained in the law. In the context of the prosecutor's argument we do not think that they would appreciate the distinction between "calling" a witness and being able to make her testify. This is not to underestimate their intelligence for the appellate courts of this state have fallen prey to the same lack of distinction. DeBardeleben.
Thus, to an ordinary layman, to call a witness would imply that he or she could or would testify — or could be made to testify. To some extent this same idea is recognized in the rule that a "witness may be hailed into court by compulsory process at the instance of either party, but this does not make the witness equally accessible or available to each." Brown v.State, 50 Ala. App. 471, 475, 280 So.2d 177, 180, cert. denied,291 Ala. 774, 280 So.2d 182 (1973). So, while the prosecutor's argument that the State could not call the defendant's wife was technically incorrect, as the State had the power to subpoena her although she could not be made to testify, we do not think that its effect upon the jury was such as to require a reversal of this particular case.
Substantial error is not presumed on appeal. The burden is on the defendant to show error and the judgment appealed from will not be reversed unless it appears to the appellate court that the error complained of probably affected injuriously the defendant's substantial rights. Bryson v. State, 264 Ala. 111,84 So.2d 785 (1956).
 IV
The defendant's argument that the State failed to establish the necessary predicate for the admission of a "transfusion record" showing the defendant's blood type is not supported by the record. This document was admitted under the business records exception to the hearsay rule. Specifically, the defendant contends that the State failed to show that it was the regular practice of the Sylacauga Hospital to make records at the time of the event recorded or within a reasonable time thereafter. This is the last of the four elements necessary for a proper predicate for the introduction of a business record.McElroy, § 254.01 (3)
This argument ignores the custodian's testimony at trial. The blood transfusion record from the hospital bears the date "7-25-72."
 "Q. Now, these records are ordinarily, normally, always made by the hospital when a person receives a blood transfusion at the hospital?
"A. Yes, sir."
The blood transfusion record was properly admitted into evidence after the State presented a proper predicate.
 V
The seizure of the blood and tissue from Mrs. Billingsley's hair was proper. The material observed was in plain view.Harris v. United States, 390 U.S. 234, 88 S.Ct. 992,19 L.Ed.2d 1067 (1968). The officers were justified in seizing the potential evidence before it could fall or be washed out.Schmerber v. California, 384 U.S. 757, 86 S.Ct. 1826,16 L.Ed.2d 908 (1966). Moreover, the defendant has no standing to challenge the alleged search of his wife's person. Fourth Amendment rights are "personal rights" which "may not be asserted vicariously." Rakas v. Illinois, 439 U.S. 128,99 S.Ct. 421, 58 L.Ed.2d 387 (1978).
Relying on Mincey v. Arizona, 437 U.S. 385, 98 S.Ct. 2408,57 L.Ed.2d 290 (1978), the defendant contends that a shotgun found in his bedroom closet was illegally seized. Mincey held that there was no "murder scene exception" to the warrant requirement of the Fourth Amendment. "[T]he warrantless search of Mincey's apartment was not constitutionally permissible simply because a homicide had recently occurred there." However, the Supreme Court did not condemn all investigating and warrantless searches at the scene of a crime.
 "We do not question the right of the police to respond to emergency situations. Numerous state and federal cases have recognized that the Fourth Amendment does not bar police officers from making warrantless entries and searches when they reasonably believe that a person *Page 1060 
within is in need of immediate aid. Similarly, when the police come upon the scene of a homicide they may make a prompt warrantless search of the area to see if there are other victims or if a killer is still on the premises. . . . And the police may seize any evidence that is in plain view during the course of their legitimate activities." Mincey, 98 S.Ct. at 2413-14.
Prior to trial, the defendant filed a motion to suppress illegally seized evidence. The record contains no ruling on this motion. At trial, no reference was made by the State to any search or to the shotgun until after the issue was raised by the defense in its cross examination of Officer Robert Hay. Defense counsel asked the officer if he "began to look for a gun there on that occasion." The defense introduced into evidence a photograph of the shotgun sitting in the closet. At this point in the progress of the trial, there was no evidence that a shotgun was the murder weapon. The defendant is not permitted to present evidence to the jury on a specific issue and then object when the State attempts to present similar evidence on this same point. Additionally, the record shows that, when the shotgun was offered into evidence by the State, there was no objection. After the State rested its case, defense counsel moved to exclude, one of the grounds for which was, "There was illegal, irrelevant, and incompetent evidence allowed to go to the jury in the case-in-chief." Under these circumstances, we do not think that the error, if any, was preserved for review.
Two other issues raised on appeal we consider to be without merit.
We have searched the record for error prejudicial to the defendant and have found none. The defendant received a fair trial. Therefore, the judgment of the Circuit Court is affirmed.
AFFIRMED.
HARRIS, P.J., and TYSON and BOOKOUT, JJ., concur.
DeCARLO, J., not sitting.
[1] ". . . [T]he statute of 1915, authorizing the husband and wife to testify in criminal cases (Acts 1915, p. 942), says, `The husband and wife may testify,' etc., thus giving to them the election as to whether they become competent witnesses, and until the election is made, neither is a competent witness in a criminal case." DeBardeleben, 16 Ala. App. at 367,77 So. at 980.
[2] "The husband or wife has the right to elect to testify. Until that election is made he or she is not a competent witness.DeBardeleben v. State, 16 Ala. App. 367, 77 So. 979." Holyfield, 365 So.2d at 110-111.
[3] In denying the petition for writ of certiorari the Alabama Supreme Court stated, "this court does not wish to be understood as approving or disapproving all of the language used or the statements of law made in the opinion of this case in the Court of Criminal Appeals." Hurst, 293 Ala. 548, 307 So.2d at 73-74.