The appellant, Louis Allen Oddo, was convicted of murder. See § 13A-6-2, Code of Alabama 1975. He was sentenced to 35 years in the state penitentiary.
The prosecution's evidence tended to show that on December 24, 1991, one unconscious black man and the body of another were found under the viaduct at 24th street in Birmingham. Officer Cedric Pinkard of the Birmingham Police Department testified that the man who was unconscious had apparently jumped from the bridge, but had survived. The other man, Douglas Garrett, had been beaten to death. Dr. Robert Brissie testified that Garrett died as a result of extensive blunt force trauma to the head. Dr. Brissie further testified that the lacerations and abrasions found on Garrett's body were consistent with those made by a baseball bat and by an abrasive surface such as the sole of a boot. Undisputed evidence was presented that the motivation behind the murder was racial hatred.
 I
The appellant contends that it was reversible error for the state to question him concerning his wife's exercise of her spousal privilege not to testify.
The state presented evidence that the appellant while he and his friends were driving away from the crime scene said that he had participated in the murder. The appellant took the stand and denied that remark. On *Page 60 
cross-examination, the prosecution attempted to impeach the appellant with the following questions:
 "[PROSECUTION]: Who was the young woman who was in the car with you?"
"[APPELLANT]: My wife.
"[PROSECUTION]: She wasn't then, was she?
"[APPELLANT]: No, sir, she was my girlfriend then.
"[PROSECUTION]: What is her name?
"[APPELLANT]: Tonya McDaniel. Tonya Oddo now.
"[PROSECUTION]: When did you marry her?
 "[APPELLANT]: February 18, 1993 or 1994. I can't remember. I haven't been married but a year and a few months — 1993.
 "[PROSECUTION]: You got married to her shortly after you got charged with Mr. Garrett's murder.
"[APPELLANT]: Yes.
 "[PROSECUTION]: And you got married to her shortly after you got charged with Mr. Garrett's murder when you learned that if you were married to her, she didn't have to testify."
 "[DEFENSE COUNSEL]: Objection, Judge, and move to strike and ask for a mistrial for such a ridiculous question to begin with.
"THE COURT: Overrule.
"[DEFENSE COUNSEL]: Absolutely prejudicial.
"THE COURT: Overrule.
 "[APPELLANT]: No, that's not the reason I married her. Because she had just — she was about — she had just turned eighteen, that's the reason I married her.
 "[PROSECUTION]: Well, have you heard what she has to say about what happened that night?
 "[APPELLANT]: After the FBI coerced her into saying it, threatened to take our baby away that died."
According to § 12-21-227, Code of Alabama 1975: "The husband and wife may testify either for or against each other in criminal cases, but shall not be compelled to do so." The Alabama Supreme Court in Ex parte Tomlin, 540 So.2d 668, 670
(Ala. 1988), discussed the history behind this statute.
 "At common law one spouse was incompetent to testify either for or against the other. Holyfield v. State, 365 So.2d 108
(Ala.Crim.App.), cert. denied, 365 So.2d 112 (Ala. 1978). Code 1975, § 12-21-227, has modified the common law by providing that a spouse may elect to so testify. The spouse becomes competent only after he or she has elected to testify. See, Arnold v. State, 353 So.2d 524 (Ala. 1977); Holyfield v. State, 365 So.2d 108 (Ala.Crim.App.), cert. denied, 365 So.2d 112 (Ala. 1978). Therefore, it is error for the prosecutor to draw an adverse inference from a defendant's failure to call his or her spouse. Ex parte Billingsley, 402 So.2d 1060 (Ala. 1981). See Ferry v. State, 161 Ga. App. 795, 287 S.E.2d 732
(1982); Turnage v. State, 216 Miss. 813, 63 So.2d 220 (1953); State v. Thompson, 290 N.C. 431, 226 S.E.2d 487 (1976)."
Tomlin, 540 So.2d at 670. (Emphasis added.)
The rationale behind the rule that a prosecutor should not be permitted to comment on a spouse's privilege not to testify was discussed in depth in Holyfield v. State, 365 So.2d 108
(Ala.Cr.App.), writ denied, 365 So.2d 112 (Ala. 1978). This court stated:
 "If for any reason the privileged spouse declines to testify for or against the other, that decision is final and the motives should not be questioned in a manner that would inure to the detriment of the defendant-spouse.
 "If a failure of the witness-spouse to testify is to be construed as testimony or as a circumstance against the defendant-spouse, the privilege and the option to testify would be annulled. Under these circumstances the defendant-spouse would in all cases run the hazard of being convicted on a constrained, implied confession or admission, or to make explanations for her failure to testify, which might involve aspects of domestic privacy.
 "When comment is made on an exercise of the marital privilege, the jury can infer *Page 61 
that the defendant had something to hide, when in fact he can neither compel nor prevent his spouse from exercising that privilege. Under these circumstances, a jury could conclude that the defendant was preventing his spouse from testifying for the purpose of suppressing evidence.
Holyfield, 365 So.2d at 112.
Applying this court's holding in Holyfield, the Alabama Supreme Court held in Ex parte Billingsley, 402 So.2d 1060
(Ala. 1981), that a reference to the witness-spouse's not testifying constitutes reversible error. The court stated:
 "At issue is whether a prosecutor may comment on a defendant's failure to call his spouse to testify where it appears the spouse's testimony would be probative on the question of defendant's guilt or innocence. We hold that such comment is improper.
 ". . . [T]he Court of Criminal Appeals held that a spouse is a competent witness until he or she elects not to testify. The court reasoned that, since the spouse is competent and is presumably biased in favor of his or her defendant spouse, the prosecutor may comment on defendant's failure to call the spouse. . . .
 "Detailed recitation of the facts is unnecessary. However, it appears that defendant's wife was with him (or close by) when the alleged murder occurred. At trial, neither the prosecution nor the defense called defendant's wife to testify. Over defendant's objection, the trial court allowed the prosecutor in his closing argument to comment at length about defendant's failure to call defendant's wife as a witness. . ..
 ". . . The Alabama legislature enacted a statute . . . which modified the common law by providing that a spouse may elect to so testify. See, Code 1975, § 12-21-227. The election is made by the witness-spouse and the defendant-spouse can in no way compel or prevent the testimony. . . . Alabama appellate courts have construed the statute as abrogating the common law to the extent that a spouse becomes a competent witness only after electing to testify. . . . Defendant's wife, not having elected to testify, was an incompetent witness. Thus, it was error to allow the prosecutor to draw an adverse inference from defendant's failure to call her."
Billingsley, 402 So.2d at 1061. (Citations omitted.)
The Alabama Supreme Court's holding in Billingsley was followed in Ex parte Tomlin, 540 So.2d 668 (Ala. 1988). In that case, the court declared that the harmless error analysis did not apply to such a situation. The court stated:
 "[T]he proper inquiry here is not whether evidence of the defendant's guilt is overwhelming but, instead, whether a substantial right of the defendant has or probably has been adversely affected. . . . Overwhelming evidence of guilt does not render prejudicial error harmless under Rule 45, Ala.R.App.P."
Ex parte Lowe, 514 So.2d 1049, 1050 (Ala. 1987). See alsoKolmetz v. State, 600 So.2d 389 (Ala.Cr.App. 1991), cert. denied, 600 So.2d 396 (Ala. 1992).
Here, it was error for the prosecutor to comment on the spousal privilege and to draw an adverse inference from the defendant's failure to call his spouse to the stand.Tomlin, 540 So.2d at 670. The prosecutor attempted to impeach the appellant by implying that his wife had exercised her spousal privilege in order to conceal evidence of his guilt. The state's actions negated the benefits afforded to the appellant by § 12-21-227 and thus constituted reversible error. According to the Alabama Supreme Court's holdings inBillingsley and Lowe, the judgment in this case is due to be reversed.
In the interests of judicial economy, we will address the appellant's remaining two issues, which may arise in subsequent proceedings.
 II
The appellant next contends that the trial court erred when it refused to instruct the jury on criminally negligent homicide.
"A defendant is entitled to a charge on a lesser included offense if there is any reasonable theory from the evidence that *Page 62 
would support the position." Ex parte Oliver, 518 So.2d 705,706 (Ala. 1987). Section 13A-2-2(4), Code of Alabama 1975, states that "[a] person acts with criminal negligence . . . when he fails to perceive a substantial and unjustifiable risk that the result will occur or that the circumstance exists."
Thus, an instruction on criminally negligent homicide is correctly given only when reasonable evidence suggests that the appellant was unaware that he created a substantial and unjustifiable risk of death to another party. Wiggins v. State,491 So.2d 1046 (Ala.Cr.App. 1986).
The appellant was convicted of intentional murder for beating a man to death with a baseball bat. No evidence was presented that suggested that the appellant was unaware of the risks associated with beating a person with a bat.
Further, an instruction on criminally negligent homicide was inconsistent with the appellant's defense that he was not involved in the crime. Kirksey v. State, 475 So.2d 646
(Ala.Cr.App. 1985). Under these facts, the appellant was either guilty of murder, or guilty of no crime at all. The trial court did not err in denying appellant's request for a jury instruction on criminally negligent homicide.
 III
Last, the appellant contends that the court erred when it allowed the state to ask a defense witness whether an individual who had recently been convicted in a similar and highly publicized racially motivated murder was also a member of the White Aryan Resistance. The appellant asserts that the testimony was irrelevant and was designed to inflame the jury against him.
 "Evidence is relevant if it has 'any tendency to throw light upon the matter in issue, even though such light may be weak and falls short of demonstration.' McCain v. State, 46 Ala. App. 627, 247 So.2d 383 (1971); Austin v. State, 434 So.2d 289 (Ala.Cr.App. 1983). 'Any fact which has causal connection or logical relation to another fact, so as to make the other fact either more or less probable, is competent or relevant.' Hurst v. State, 397 So.2d 203 (Ala.Cr.App.), cert. denied, 397 So.2d 208 (Ala. 1981); Waters v. State, 357 So.2d 368 (Ala.Cr.App.), cert. denied, 357 So.2d 373 (Ala. 1978)."
Mitchell v. State, 473 So.2d 591, 594 (Ala.Cr.App. 1985). "Evidence . . . is relevant and admissible 'if it has any probative value, however slight, upon a matter in the case.' C. Gamble, McElroy's Alabama Evidence § 21.01(1) (4th ed. 1991)."Leitner v. State, 631 So.2d 273, 278 (Ala.Cr.App. 1993).
In Jordan v. State, 629 So.2d 738 (Ala.Cr.App. 1993), cert. denied, ___ U.S. ___, 114 S.Ct. 2112, 128 L.Ed.2d 671 (1994), this court held that evidence of an appellant's affiliation with a gang known for criminal activity was probative of motive and that its probative value was not outweighed by its prejudicial effect. Here, the state asserts that the defense witness's testimony was relevant to establish the appellant's association with a white supremacist group. This evidence was correctly received at trial.
For the reason stated in Part I of this opinion, the appellant's conviction is reversed and the case remanded for proceedings not inconsistent with this decision.
REVERSED AND REMANDED.
All the Judges concur.