775 So.2d 248 (1997)
R.D.H
v.
STATE.
CR-94-2239.
Court of Criminal Appeals of Alabama.
July 3, 1997.
Opinion Overruling Rehearing September 11, 1998.
Certiorari Quashed June 2, 2000.
*250 Tommy Nail, Birmingham, for appellant.
Bill Pryor, atty. gen., and Jean A. Therkelsen, asst. atty. gen., for appellee.
Alabama Supreme Court 1972280.
LONG, Presiding Judge.
The appellant, R.D.H., was convicted of second degree sodomy and first degree sexual abuse. He was sentenced to 10 years in prison for each conviction; the sentences were to run consecutively. Three years of his sentence for the sexual abuse conviction were suspended. We must reverse the appellant's convictions for the reasons discussed in Part II of this opinion.

I
The appellant contends that his due process rights were violated by a preindictment delay of approximately three years from the time that the allegations underlying the charges against him were made known to law enforcement officials to the time that the indictments were returned against him. He argues that the indictments and the charges against him are due to be dismissed.
The record reflects that sometime in September 1989, J.H., the appellant's stepson, who was 18 years old at the time, contacted the Jefferson County Sheriff's Department, and made a taped-recorded statement to a sheriff's deputy that he had been the victim of ongoing sexual abuse by the appellant, which began when he was 9 years old and continued until he was 14. The deputy who took the statement did not work in the sexual abuse division of the sheriff's department, and he transferred J.H.'s case to another division within the department, where the case went unattended until early 1992, when another deputy with the department reopened the case after she was contacted by members of J.H.'s family who wanted to know why the sheriffs department had not investigated J.H.'s allegations. In June 1992, D.H.J.H.'s mother and the appellant's former wifesigned an affidavit containing a complaint that the appellant had sexually abused J.H., and the prosecution began. The appellant was indicted in November and December 1992 on charges arising out of these allegations. He subsequently filed a motion to dismiss the indictments on the ground that he had been prejudiced by the preindictment delay.
The United States Supreme Court has stated that the "Due Process Clause had a limited role to play" in protecting against the prejudice caused by a preindictment delay. United States v. Lovasco, 431 U.S. 783, 789, 97 S.Ct. 2044, 2048, 52 L.Ed.2d 752 (1977), quoted in State v. Prince, 581 So.2d 874, 877 (Ala.Cr. App.1991). "A defendant is charged with *251 a heavier burden of proof in showing a preindictment delay due process violation than in showing a denial of his speedy trial rights." Stoner v. State, 418 So.2d 171, 180 (Ala.Cr.App.), cert. denied, 418 So.2d 184 (Ala.1982), cert. denied, 459 U.S. 1128, 103 S.Ct. 764, 74 L.Ed.2d 978 (1983). "In order to establish a due process violation due to preindictment delay, a defendant must show `(1) that the delay caused actual prejudice to the conduct of his defense, and (2) that the delay was the product of deliberate action by the government designed to gain a tactical advantage.' United States v. Lindstrom, 698 F.2d 1154, 1157-58 (11th Cir.1983)." Prince, 581 So.2d at 878. A defendant seeking to establish the first prong necessary to show a due process violation from the delay "must show `actual prejudice, not the mere possibility of prejudice, and that the delay caused substantial prejudice to [the defendant's] rights to a fair trial.'" Id., quoting Stoner, 418 So.2d at 180. "[P]assage of time per se is not a constitutional violation." Stoner, 418 So.2d at 180, quoting Lovasco, supra.
The only allegation of prejudice in this case is the appellant's purported decline in "mental functions." The record reflects that a competency hearing was held to determine whether the appellant was competent to stand trial and to assist his attorney in his defense. The appellant was determined to be competent to stand trial. In his brief, the appellant reiterates the same medical information presented at the competency hearing in an effort to show that he suffered actual prejudice due to the purported decline in his mental functions. We do not find this proves actual prejudice. The appellant has not met his burden of proof with regard to the first prong necessary to show a due process violation for preindictment delay.
Even if the appellant had proven actual prejudice, he has not established the second necessary prong, that the delay "was the product of deliberate action by the government designed to gain a tactical advantage." Lindstrom, 698 F.2d at 1158.
Because the appellant did not establish that the preindictment delay constituted a due process violation, the trial court correctly denied his motion to dismiss the indictments on this ground.

II.
The appellant next contends that he was denied a fair trial because of the admission of evidence, over his objection, concerning his affiliation with the Ku Klux Klan. For the reasons stated below, we must agree.
Before opening arguments and outside the presence of the jury, the appellant's counsel objected to the prosecution's stated intention to introduce evidence of the appellant's association with the Ku Klux Klan while he was married to D.H. and living in the same household with the victim, J.H. The trial court overruled the appellant's objection and stated that that evidence could be offered by the prosecution for the limited purpose of showing that J.H. and his mother had delayed reporting the alleged sexual abuse of J.H. to law enforcement officials because they were afraid of the appellant. The trial court stated that it would instruct the jury as to this limited purpose when the prosecution offered that evidence. The court also noted that it was giving the appellant a standing exception to its ruling.
The state first introduced evidence regarding the appellant's affiliation with the Ku Klux Klan during direct examination of J.H. by the district attorney. Later, further, more extensive, evidence of the appellant's activities with the Ku Klux Klan was introduced by the state through D.H., who testified in response to questioning by the district attorney that throughout her marriage to the appellant, the appellant had held high-ranking positions with the Ku Klux Klan, including, at various times, the positions of the Imperial Dragon and the Grand Dragon of Alabama. D.H. further testified that Ku Klux Klan meetings held by the appellant frequently took place *252 at their house during the marriage and that at some of these meetings, the appellant had committed acts of physical violence against her in front of other Ku Klux Klan members, but that none of the members had ever come to her assistance. When the appellant's counsel renewed his objection to any testimony concerning the appellant's affiliation with the Klan, the trial court stated:
"You have a continuing objection about this. You have a continuing objection. Ladies and gentlemen [of the jury], I told you earlier [sic] and I'll tell you now, the information or testimony which she is giving about his activities with the Klan, if you believe them, you may consider in deciding how much fear she had. Her mental state as to what power she may have believed he had and what harm could come to her. But do not use the fact that he may belong to an organization to punish him for belonging to that organization. Do you understand me?"
(R. 579-80.) The appellant's counsel later twice moved for a mistrial based on the introduction of evidence of the appellant's affiliation with the Ku Klux Klan. The motions for a mistrial were denied.
Later, during its oral charge to the jury, the trial court gave the following instruction:
"I believe I gave you some instructions earlier in this trial and I will allude to them again this time. I believe there was testimony in this case about the Ku Klux Klan or what have you.
"Again, I instruct you that you do not punish or judge on the fact that they were a member of the Ku Klux Klan. But you may take that, if you believe it, into consideration in determining the credibility of the witnesses. The mother and, I believe, the son both testified that some of their actions were based on fear. If you believe that you may take that into consideration in evaluating their testimony. Again, do not punish because of membership."
(R. 655-56.) The appellant's counsel objected to this instruction as follows:
"I take exception with the Court talking to the jury about the affiliation with the Ku Klux Klan to be considered regarding [the] credibility of the mother and son in evaluating their actions which they say is motivated by fear. I don't think that is justified by the evidence, nor do I think it is justified by the law."
(R. 666-67.) The trial court noted the appellant's exception.
This court has recognized that the Ku Klux Klan is an organization "which espouses white supremacy and racial hatred." Chambliss v. State, 373 So.2d 1185, 1207 (Ala.Cr.App.), cert. denied, 373 So.2d 1211 (Ala.1979). We have further noted that "[t]he Klan is synonymous with violence, harassment, and intimidation." Gillespie v. State, 549 So.2d 640, 647 (Ala.Cr. App.1989). Evidence of a defendant's affiliation with the Ku Klux Klan, like evidence of a defendant's association with a "gang," may properly be considered to be evidence of collateral bad acts. See Thomas v. State, 625 So.2d 1149 (Ala.Cr.App. 1992), rev'd on other grounds, 625 So.2d 1156 (Ala.1993) (evidence of "gang" membership is presumptively prejudicial).
Evidence of collateral "bad acts" is presumptively prejudicial and is admissible only when the evidence is probative and under certain limited circumstances. Thomas, 625 So.2d at 1153.
"Evidence of any offense other than that specifically charged is prima facie inadmissible. Nicks v. State, 521 So.2d 1018 (Ala.Cr.App.1987), aff'd, 521 So.2d 1035 (Ala.), cert. denied, 487 U.S. 1241, 108 S.Ct. 2916, 101 L.Ed.2d 948 (1988). However, evidence of collateral crimes or bad acts is admissible as part of the prosecutor's case if the defendant's collateral misconduct is relevant to show his guilt other than by suggesting that he is more likely to be guilty of the charged offense because of his past misdeeds. Nicks v. State; Brewer v. State, *253 440 So.2d 1155 (Ala.Cr.App.1983).... The generally recognized exceptions to the general exclusionary rule, or tests for relevancy, whereby evidence of collateral crimes or acts may be admitted are as follows:
"`(1) Relevancy to prove physical capacity, skill, or means to commit the now-charged crime; (2) part of the res gestae or part of a continuous transaction; (3) relevancy to prove scienter or guilty knowledge; (4) relevancy to prove criminal intent; (5) relevancy to prove plan, design, scheme, or system; (6) relevancy to prove motive; (7) relevancy to prove identity; (8) relevancy to rebut special defenses; and (9) relevancy in various particular crimes.'
"Nelson v. State, 511 So.2d 225, 233 (Ala.Cr.App.1986); Twilley v. State, 472 So.2d 1130 (Ala.Cr.App.1985). All of the exceptions relate to the relevancy of the evidence, which means that evidence of separate and distinct crimes is admissible only when the evidence is relevant to the crime charged. Mason v. State, 259 Ala. 438, 66 So.2d 557 (1953); Nicks v. State. If the evidence is not so remote as to lose its relevancy, the decision to allow or to not allow evidence of collateral crimes or acts as part of the state's case rests in the sound discretion of the trial court. McGhee v. State, 333 So.2d 865 (Ala.Cr.App.1976)."
Bush v. State, 695 So.2d 70, 85 (Ala.Cr. App.1995), aff'd, 695 So.2d 138 (Ala.1997); See C. Gamble, McElroy's Alabama Evidence § 69.01 (5th ed. 1996).
The state argues, and the trial court reasoned, that evidence of the appellant's affiliation with the Ku Klux Klan was admissible to show that J.H. and his mother delayed reporting the alleged sexual abuse of J.H. to law enforcement officials out of a well-founded fear of the appellant. Thus, the prosecution apparently sought to negate any unfavorable inferences regarding the credibility of its witnesses that might arise because the witnesses did not immediately report a serious crime, contrary to what might ordinarily be expectedparticularly where one of witnesses is the mother of the victim.
Because the trial transcript reflects that the appellant's counsel, when cross-examining J.H. and D.H., did not endeavor to place strong emphasis on the significance of their delay in reporting the alleged sexual abuse by the appellant, it is to some degree questionable whether the matter that the state sought to establish was ever a real and open issue in the case. Nor can we say that the appellant's counsel, during cross-examination of J.H. and D.H., "opened the door" for the admission of evidence concerning the appellant's membership in the Ku Klux Klan. However, because the general credibility of J.H. and his mother came under attack during cross-examination by the defense, we are not prepared to say that evidence directed toward explaining their delay in reporting the alleged sexual abuse was not important to the state's case or that the issue was not at least indirectly exploitable by the defense. The appellant's association with an organization known for violence and intimidation was at least arguably relevant to this issue.
That being said, we are, however, also mindful of the well-settled principle that even where the proffered evidence of collateral bad acts is relevant, its probative value must not be substantially outweighed by the danger of undue and unfair prejudice for the evidence to be admissible. Ex parte Smith, 581 So.2d 531, 535 (Ala.1991); Hargress v. City of Montgomery, 479 So.2d 1137 (Ala.1985); Thomas, 625 So.2d at 1153; Jones v. State, 473 So.2d 1197 (Ala.Cr.App.1985). See McElroy's Alabama Evidence, §§ 20.01 and 21.01(4). "Prejudicial" in this context means "`an undue tendency to move the tribunal to decide on an improper basis, commonly, though not always, an emotional one.'" Averette v. State, 469 So.2d 1371, 1374 (Ala.Cr.App.1985), quoting State v. Forbes, 445 A.2d 8, 12 (Me.1982). *254 Before the probative value of evidence of collateral bad acts may be held to outweigh its potential prejudicial effect, the evidence must be "reasonably necessary" to the state's case. Bush, 695 So.2d at 85; Averette, 469 So.2d at 1374.
The record reflects that the trial court allowed the state considerable latitude in its direct examination of J.H. and D.H. to elicit testimony tending to establish the appellant's allegedly violent nature, including specific instances of physical abuse against J.H. and D.H., and the atmosphere of fear and intimidation that pervaded the household during D.H.'s marriage to the appellant. This testimony, unlike the testimony at issue, contained no direct reference to the appellant's affiliation with the Ku Klux Klan and could serve as an independent and adequate basis for establishing, as the state sought to do, that the delay in reporting the alleged sexual abuse was motivated by fear of the appellant. As Professor Gamble has stated: "One of the specific criterion to be used, in deciding when prejudicial effect substantially outweighs probative value, is whether or not there exist less prejudicial means of proving the same thing. If such alternative, less prejudicial evidence exists, then such availability argues in favor of excluding the prejudicial evidence." McElroy's Alabama Evidence, § 20.01 at 63 (discussing the import of the Alabama Supreme Court's holding in Ex parte Cofer, 440 So.2d 1121 (Ala.1983)). We hold, therefore, that, despite any materiality and relevance of the evidence concerning the appellant's affiliation with the Ku Klux Klan (and, as we have suggested, such materiality and relevance was arguably limited), this evidence should have been excluded because the issue to which it was directed was shown by other, less prejudicial evidence. Thus, the trial court erred in overruling the appellant's objections to admission of the evidence concerning the appellant's affiliation with the Ku Klux Klan.
Whether the improper admission of evidence of collateral bad acts amounts to prejudicial error or harmless error must be decided on the facts of the particular case. Hobbs v. State, 669 So.2d 1030, 1033 (Ala.Cr.App.1995). We cannot say that the possible unfair prejudice resulting from the admission of this evidence was cured by the trial court's limiting instructions to the jury that it was to consider the evidence only for the purpose of considering whether J.H. and his mother had delayed reporting the alleged crime because they were afraid of the appellant, and that the jury was not to "punish" the appellant for his affiliation. Because of the Ku Klux Klan's notoriety for attitudes of racial bigotry and acts of violence, common sense tells us that jurors hearing evidence of an accused's association with the Ku Klux Klan are likely to take a dim view of the accused's character. It is untenable to insist that a defendant's association with the Ku Klux Klan would not irreversibly prejudice him in the eyes of the jury despite a limiting instruction from the court.
This is not to say that admission of evidence of an accused's association with an organization such as the Ku Klux Klan is always error and grounds for reversal. Clearly, in some circumstances, the materiality and relevance of such evidence would outweigh its undeniably prejudicial effect. See, e.g., Chambliss, supra, 373 So.2d at 1207-08 (evidence of defendant's affiliation with the Ku Klux Klan was admissible to show motive for defendant's participation in the bombing of a church whose membership was predominately black). However, that is not the case here. Therefore, the appellant's convictions must be reversed.
The judgment is reversed and the case is remanded to the trial court for proceedings consistent with this opinion.
REVERSED AND REMANDED.
ALL JUDGES CONCUR.

*255 On Application for Rehearing

LONG, Presiding Judge.
APPLICATION FOR REHEARING OVERRULED; RULE 39(k) MOTION DENIED.
McMILLAN, COBB, and BASCHAB, JJ., concur.
BROWN, J., dissents with opinion.
BROWN, Judge, dissenting.
Upon careful consideration of the state's application for rehearing and the accompanying brief, I must respectfully dissent from the denial of the state's application for rehearing.
In our opinion of July 3, 1997, this court admitted that "the appellant's association with an organization known for violence and intimidation was at least arguably relevant." 775 So.2d at 253. However, we concluded that the prejudicial effect of that evidence outweighed its probative value because, we said, it was "untenable to insist that a defendant's association with the Ku Klux Klan would not irreversibly prejudice him in the eyes of the jury despite a limiting instruction from the court." 775 So.2d at 254.
In Oddo v. State, 675 So.2d 58, 62 (Ala. Cr.App.1995), a case in which this court reversed the defendant's conviction on other grounds, this court held that evidence establishing the defendant's association with a white supremacist group was correctly admitted in his murder trial. As we noted in Oddo:
"`Evidence is relevant if it has "any tendency to throw light upon the matter in issue, even though such light may be weak and falls short of demonstration."' McCain v. State, 46 Ala. App. 627, 247 So.2d 383 (1971); Austin v. State, 434 So.2d 289 (Ala.Cr. App.1983). "Any fact which has causal connection or logical relation to another fact, so as to make the other fact either more or less probable, is competent or relevant." Hurst v. State, 397 So.2d 203 (Ala.Cr.App.), cert. denied, 397 So.2d 208 (Ala.1981); Waters v. State, 357 So.2d 368 (Ala.Cr. App.), cert. denied, 357 So.2d 373 (Ala. 1978).'
"Mitchell v. State, 473 So.2d 591, 594 (Ala.Cr.App.1985). `Evidence ... is relevant and admissible "if it has any probative value, however slight, upon a matter in the case." C Gamble, McElroy's Alabama Evidence § 21.01(1) (4th ed.1991).' Leitner v. State, 631 So.2d 273, 278 (Ala.Cr.App.1993)."
675 So.2d at 62.
Similarly, in Jordan v. State, 629 So.2d 738, 741 (Ala.Cr.App.1993), cert. denied, 511 U.S. 1112, 114 S.Ct. 2112, 128 L.Ed.2d 671 (1994), this court held that evidence of an accused's connection with a gang known for its criminal activity was admissible as proof of motive, and that the probative value of that evidence was not outweighed by its prejudicial impact.
In the present case, a substantial part of the intimidation suffered by the victim and his mother was directly related to the appellant's involvement with the Ku Klux Klan, including the fact that Klan activities took place in the appellant's home. This evidence directly pertained to the state of mind of the victim and his mother, and was relevant to explain why there was a lengthy delay between the commission of the crimes and the victim's reporting of the abuse.
Moreover, the trial court in its limiting instructions made it clear to the jury that evidence of the appellant's association with the Klan was offered only to show the state of mind of the victim and the victim's mother and why they failed to make a contemporaneous report of the offenses.
Accordingly, I would grant the state's application for rehearing, and I would affirm the appellant's convictions.