**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Paul Arthur NOLL, Defendant-Appellant.**

**No. 78–5740.**

United States Court of Appeals, Fifth Circuit.

Aug. 13, 1979.

---

J. Cheney Mason, Orlando, Fla., for defendant-appellant.

John E. Lawlor, III, Asst. U. S. Atty., Jacksonville, Fla., for plaintiff-appellee.

Before WISDOM, AINSWORTH and RONEY, Circuit Judges.

AINSWORTH, Circuit Judge: .

Paul Arthur Noll appeals his conviction on one count of unlawful attempt to manufacture the controlled substance phencyclidine (PCP) hydrochloride,[1] in violation of 21 U.S.C. §§ 841(a)(1) and 846 and 18 U.S.C. § 2.[2] Noll asserts that delays in his indictment and trial violated the Speedy Trial Act (18 U.S.C. § 3161 *et seq.*) and the sixth amendment, contends that the district court erred in admitting hearsay statements of an alleged coconspirator into evidence and argues that the conduct of government agents constituted entrapment and a denial of due process. He also claims that the admission into evidence of a codefendant's guilty plea denied him a fair trial, challenges the sufficiency of the evidence and avers that his sentence was unconstitutional. We find these contentions meritless and therefore affirm.

According to the testimony at trial, a confidential informant arranged a meeting on March 3, 1978 between Carl Harrell, an agent in the Drug Enforcement Administration's (DEA) Baltimore office, and Barry Mullins, an alleged coconspirator of appellant Noll. Mullins told Harrell that he wished to purchase, at $1,000 per gallon, a quantity of phenyl magnesium bromide (PMB), with which his associates planned to manufacture PCP. After this meeting, Harrell bought five gallons of PMB for $124 from a Colorado manufacturer and obtained another five gallons that the DEA had used in a previous investigation. Before turning the PMB over to Mullins, the DEA installed an electronic beeper beneath the false bottom of a specially manufactured can. Harrell then delivered the can, holding five gallons of the PMB, and another drum, containing an equal amount, to Mullins and codefendant Raymond Lurz on March 31; he received in return $5,000 in cash and agreed also to accept, once manufactured, $5,000 worth of liquid PCP to complete payment.

DEA Agent Joseph Boykevich monitored the beeper following delivery of the PMB. The two cans were placed in the back of a tow truck and taken to the home of codefendant Lurz, where they were stored from March 31 through April 24. On the evening of April 24, Agent Boykevich observed that the can containing the transmitter was moving in a van driven by Lurz, accompanied by one passenger, out of Baltimore south on Interstate 95. When the van stopped at a coffee shop in North Carolina, Boykevich and other agents identified appellant Noll as the passenger. Lurz and Noll proceeded to the residence of codefendant Dennis Witt, a trailer located in a park in Sorrento, Florida. On April 25, Roy Kelsey, an agent in the DEA's Orlando, Florida office, saw the three men unload the van and watched Noll pour the contents of various cans and bottles into a large garbage can, periodically stirring the mixture. Kelsey and several other agents maintained surveillance for approximately five hours and then moved in to arrest Noll, Lurz and Witt for attempted manufacture of PCP. DEA chemist Dr. William Beazley later analyzed the various chemicals found at the scene and identified the substance piperidinocyclo hexanecaronitrile (PCC) and other chemicals used to make PCP. According to Dr. Beazley, PCC "is the immediate

---

1. The drug PCP is commonly known as "Angel Dust."

2. 21 U.S.C. § 841(a)(1) provides that "[e]xcept as authorized by this subchapter, it shall be unlawful for any person knowingly or intentionally—. . . to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance or . . .."

Under 21 U.S.C. § 846,

Any person who attempts or conspires to commit any offense defined in this subchapter is punishable by imprisonment or fine or both which may not exceed the maximum punishment prescribed for the offense, the commission of which was the object of the attempt or conspiracy.

18 U.S.C. § 2 provides:

(a) Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal.

(b) Whoever willfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal.

compound necessary to make PCP"; to produce that drug, the PCC must be dried, dissolved in benzene and mixed with PMB. Dr. Beazley said that quantities of both benzene and PMB were present at the Sorrento site.

A complaint filed with a magistrate in the United States District Court for the Middle District of Florida on April 26, the day after the arrest, charged Noll with attempted manufacture of PCP, in violation of 21 U.S.C. §§ 841(a)(1) and 846 and 18 U.S.C. § 2. On May 25, the magistrate entered an order dismissing this complaint on the Government's motion. Meanwhile, Noll was indicted in the United States District Court for the District of Maryland for conspiracy to manufacture PCP, in violation of 21 U.S.C. § 841(a)(1) and for violating the Hobbs Act, 18 U.S.C. § 1952(a)(3).[3] Both charges involved the same course of alleged criminal conduct that ended with Noll's arrest in Sorrento, Florida. The indictment brought in Maryland federal court was dismissed on the Government's motion on July 12. On June 7, Noll had also been indicted in the Middle District of Florida, Ocala Division, on one count of manufacturing PCP, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2. A magistrate dismissed this indictment on the Govern-

ment's motion on July 10. Finally, on August 15, another indictment was filed in the Middle District of Florida, Ocala Division, charging Noll with one count of conspiracy under 21 U.S.C. § 846 to manufacture PCP, in violation of 21 U.S.C. § 841(a)(1), one count of interstate travel to promote an unlawful activity, in violation of 18 U.S.C. §§ 1952(a)(3) and 2 and one count of attempt to manufacture PCP hydrochloride, in violation of 21 U.S.C. §§ 841(a)(1) and 846 and 18 U.S.C. § 2.

After a four-day trial ending October 19, 1978, the jury acquitted Noll on the conspiracy and Hobbs Act counts but convicted him of attempt to manufacture PCP hydrochloride. The district judge sentenced Noll to three years' imprisonment.

■ Noll first alleges that the delay between his arrest and trial violated the Speedy Trial Act (Act) and the Sixth Amendment. Noll and the Government contest the manner in which time should be computed under the Act, but we need not resolve that dispute or decide whether the Act was violated in this case, since the Act's sanctions, which require dismissal for unjustified violations of the statute's time limits, do not become effective until July 1, 1979.[4] *See* 18 U.S.C. §§ 3161(f), (g), 3163(c);[5] *United States v. Phillips*, 5 Cir.,

---

**3.** 18 U.S.C. § 1952(a)(3) provides that

(a) Whoever travels in interstate or foreign commerce or uses any facility in interstate or foreign commerce, including the mail, with intent to—

. . . . .

(3) otherwise promote, manage, establish, carry on or facilitate the promotion, management, establishment, or carrying on, of any unlawful activity,

and thereafter performs or attempts to perform any of the acts specified in subparagraph [] . . . (3) shall be fined not more than $10,000 or imprisoned not more than five years, or both.

**4.** 18 U.S.C. § 3161 sets forth the amount of time that may permissibly elapse between arrest and indictment, between indictment and arraignment and between arraignment and trial. Section 3161 phases in these time limits over a four-year period following the effective dates established in section 3163(a) and (b). It also provides that certain periods of delay "shall be excluded" in computing time under the Act and identifies "[t]he factors, among

others, which a judge shall consider in determining whether to grant a continuance . . ." Under section 3162, government failure to comply with the time limits promulgated in section 3161 results in dismissal of charges contained in a complaint, information or indictment. The statute also names certain factors, among others, that the court shall consider in "determining whether to dismiss the case with or without prejudice."

**5.** 18 U.S.C. § 3163 provides that

(a) The time limitation in section 3161(b) of this chapter—

(1) shall apply to all individuals who are arrested or served with a summons on or after the date of expiration of the twelve-calendar-month period following July 1, 1975; and

(2) shall commence to run on such date of expiration to all individuals who are arrested or served with a summons prior to the date of expiration of such twelve-calendar-month period, in connection with the commission of an offense, and with respect to which offense

1978, 569 F.2d 1315, 1316; *United States v. Bullock*, 5 Cir., 1978, 551 F.2d 1377, 1381. Until those sanctions take effect, we first look to the interim plan of each district court, adopted pursuant to Fed.R.Crim.P. 50(b),[6] to determine whether a case must be dismissed for pretrial delay. *See United States v. Phillips, supra*, 569 F.2d at 1316; *United States v. Bullock, supra*, 551 F.2d at 1381. "[F]ailure to comply with the time limits prescribed" by the interim plan of the Middle District of Florida does not require dismissal of a case. Section 10(d), Plan to Minimize Undue Delay and Further Prompt Disposition of Criminal Cases, United States District Court, Middle District of Florida.[7] *Cf. United States v. Bullock, supra*, 551 F.2d at 1382.

■ Under Fed.R.Crim.P. 48(b),[8] "if there is unnecessary delay in bringing a defendant to trial," the district court "may dismiss the indictment." To decide whether a delay is either "unnecessary" and thus warrants dismissal of the indictment under Rule 48(b), or constitutes a violation of the Sixth Amendment right to a speedy trial, we must apply the "balancing test" announced by the Supreme Court in *Barker v. Wingo*, focusing on four factors: "Length of delay, the reason for the delay, the defendant's assertion of his right [to a speedy trial], and prejudice to the defendant." 407 U.S. 514, 530, 92 S.Ct. 2182, 2192, 33 L.Ed.2d 101 (1972). Here, we do not regard the pretrial delay as excessive. Noll was first arraigned on May 19, 1978. The provisions of the Act applicable when the original indictment was filed required Noll's trial to start within 120 days of arraignment—by September 17. The trial actually began on October 16, only 29 days late. Also, the delay was apparently not occasioned by either negligence or bad faith on the part of the Government. Instead, it was caused by the good faith filing and dismissal of several indictments, a process that reflected the Government's attempts to identify the appropriate venue. The criminal activities of Noll and his associates and the investigation leading to their arrest began in Baltimore; as the investigation continued, it was conducted largely by agents from the DEA's Baltimore office. All of the defendants except Witt lived in the Baltimore area. However, the actual attempt to manufacture PCP occurred in the Middle District of Florida, making that district the only one in which Noll and his codefendants could be prosecuted for all the offenses arising from their criminal conduct. Further, Noll did not assert his right to a speedy trial until after the filing of the last indictment in the Middle District of Florida. Finally, in our view, the pretrial delay involved here did not prejudice Noll's rights. In *Barker*, the Supreme Court said that prejudice "should

no information or indictment has been filed prior to such date of expiration.

(b) The time limitation in section 3161(c) of this chapter—

(1) shall apply to all offenses charged in informations or indictments filed on or after the date of expiration of the twelve-calendar-month period following July 1, 1975; and

(2) shall commence to run on such date of expiration as to all offenses charged in informations or indictments filed prior to that date.

(c) *Section 3162 of this chapter shall become effective after the date of expiration of the fourth twelve-calendar-month period following July 1, 1975.*
(emphasis added)

6. Rule 50(b) provides that "[t]o minimize undue delay and to further the prompt disposition of criminal cases, each district court shall conduct a continuing study of the administration of criminal justice in the district court and before United States magistrates of the district and shall prepare plans for the prompt disposition of criminal cases in accordance with the provisions of Chapter 208 of Title 18, United States Code" (the Speedy Trial Act)..

7. Section 10(d) of the Middle District of Florida's plan provides in pertinent part that "failure to comply with the time limits prescribed herein shall not require dismissal. The court retains the power to dismiss a case for unnecessary delay pursuant to rule 48(b) of the Federal Rules of Criminal Procedure."

8. Under Rule 48(b), Fed.R.Crim.P., "[i]f there is unnecessary delay in presenting the charge to a grand jury or in filing an information against a defendant who has been held to answer to the district court, or if there is unnecessary delay in bringing a defendant to trial, the court may dismiss the indictment, information or complaint."

be assessed in the light of the interests of defendants which the speedy trial right was designed to protect" and identified three such interests: "(i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired." 407 U.S. at 532, 92 S.Ct. at 2193. As Noll has been free on an unsecured $5,000 bond since his arraignment on the June 7, 1978 indictment, he has not suffered "oppressive pretrial incarceration." An accused will always experience some anxiety and concern and the delay here may have worsened those feelings for Noll. However, the primary interest underlying the right to a speedy trial is the desire to avoid impairment of the accused's defense. *Id.* Noll has not alleged, nor does the record indicate, that he lost any witness or evidence because of the pretrial delay. Under these circumstances, we conclude that there was no unnecessary delay within the meaning of Rule 48(b) and find no violation of Noll's Sixth Amendment rights.

 Noll also contends that the district judge erred in allowing DEA Agent Harrell to testify as to the hearsay statements of alleged coconspirator Mullins. At the time of trial, the panel decision in *United States v. James*, 5 Cir., 1978, 576 F.2d 1121, had significantly changed this circuit's standard and procedures for determining the admissibility of coconspirator hearsay. We had also decided, on our own motion, to rehear *James* en banc. Thus, the law in this circuit respecting the hearsay statements of coconspirators was in a state of some confusion. Because of this uncertainty, a magistrate and the district judge each conducted a separate pretrial hearing, pursuant to the *James* panel decision, to determine by a preponderance of the independent evidence whether the alleged conspiracy existed, the declarant and defendants were members of it and the statements were made in furtherance of the conspiracy. Both the magistrate and the trial judge concluded that these elements were present and the judge accordingly decided that the coconspirator's statements were admissible under *James.* When the statements were admitted into evidence during Harrell's testimony and again at trial's end, the district judge instructed the jury not to consider the statements unless it determined, beyond a reasonable doubt from the independent evidence, that the conspiracy existed, that a defendant was one of the members and that the statements were made in furtherance of the conspiracy. This charge reflected the prevailing practice under *United States v. Apollo*, 5 Cir., 1973, 476 F.2d 156, which established the test for admissibility of coconspirator hearsay before the *James* panel decision.

Noll now argues that the district court erred in admitting the hearsay statements, because the standard of the *James* panel decision was not met, and asserts that use of the *Apollo* instruction constituted reversible error. We disagree. Our en banc decision in *United States v. James*, 5 Cir., 1979, 590 F.2d 575, which substantially modified the panel opinion, operates "only prospectively," applying "only as to coconspirator statements which the government seeks to introduce in trials commencing after 30 days from the date" of the en banc opinion. *Id.* at 583. The trial court therefore did not err in giving the jury the *Apollo* charge, which expressed the law in this circuit before *James.* Moreover, we also conclude that the district judge complied with the procedures and standard announced in the *James* panel decision. He thus required the Government to demonstrate twice the admissibility of the hearsay, once to the court under the *James* panel decision and once to the jury pursuant to *Apollo*, and thereby afforded Noll even greater protection than either decision contemplated.

 Noll next asserts that Agent Harrell, by supplying the PMB to Barry Mullins, engaged in "legal entrapment"—conduct "so outrageous that due process should have barred the prosecution." There is no evidence in the record to suggest that Harrell or the Government's confidential informer induced Mullins and his associates to commit a crime. Instead, Mullins informed Harrell that he wanted the PMB because

his associates planned to use it to manufacture PCP. Moreover, Noll never had any contact with DEA agents or the informant during his involvement in this illegal enterprise. " 'The conduct with which the defense of entrapment is concerned is the manufacturing of crime by law enforcement officials and their agents.' '[I]f the initiator of the criminal activity is not a government agent the defense of entrapment does not apply.' " *United States v. Garcia*, 5 Cir., 1977, 546 F.2d 613, 615 (citations omitted).

█ Noll further urges that he was denied a fair trial by the testimony of codefendant Dennis Witt. Before trial, pursuant to an agreement with the Government, Witt pleaded guilty to one count of attempting to manufacture PCP hydrochloride and was placed on two years' probation. Called as a government witness against Noll, whom he had known "10 or 12 years," Witt testified that Noll and Lurz had come to his home in Sorrento, taken "some stuff" out of their van and begun "mixing some chemicals in the backyard." However, despite his earlier guilty plea, Witt denied knowing what Noll and Lurz were mixing and said that he "didn't know for a fact" that they were making an illegal controlled substance. At that point, the Government told the trial judge, outside the jury's hearing, that "Mr. Witt is not exactly a cooperative witness," since in pleading guilty he had "admitted under oath that he knew what they were making was illegal," and the judge gave the Government permission to ask Witt "whether or not he pled guilty to Count 3 of the indictment." When the Government inquired "[w]hat has befallen you due to your involvement in the transaction," Witt replied, "I have been given two years probation, found guilty." The district judge immediately instructed the jury to "[d]isregard the answer of the witness that he's been given two years probation, because that doesn't concern the Jury in this case." The defense then moved for a mistrial, arguing that Witt's testimony of having been found guilty was so prejudicial as to require that result. The jury temporarily retired and during the ensuing bench

conference, the judge denied the mistrial motion and the Government, after reiterating that its purpose had been "to have Mr. Witt admit that he knew it was a controlled substance—something that he has done before. He did it under oath," stated that it "would just prefer to discontinue the questioning of Mr. Witt altogether." The jurors returned to the courtroom and the judge told them "to disregard entirely the testimony of Mr. Witt. Do not give any credence or value to his testimony whatsoever. Just consider it the same as if he had never testified in this case and never said a word in this case."

Noll now contends that this instruction was inadequate to cure the prejudice caused by Witt's testimony, which allegedly implicated Noll and thereby denied him a fair trial. In our view, the district court's emphatic instruction was sufficient to ensure that the jury would not consider Witt's testimony in reaching its verdict as to Noll.

█ Noll's challenge to the sufficiency of the evidence supporting his conviction is also without merit. Alleged coconspirator Barry Mullins, when negotiating the PMB purchase with Agent Harrell, explained that his associates planned to use the chemical to manufacture PCP. Noll was observed riding in the van that transported the PMB from Baltimore to Florida and DEA agents watched as he helped unload the van and then measured and mixed various substances in a large garbage can. A government chemist testified that, at the time of arrest, Noll and his confederates had been making PCC, "the immediate compound necessary to make PCP." To produce the PCP, the PCC had to be dried, dissolved in benzene and mixed with PMB. The DEA agents found heat lamps and quantities of both benzene and PMB at the scene. Under these circumstances, we conclude that "a reasonably-minded jury could accept the relevant evidence as adequate and sufficient to support the conclusion of the defendant's guilt beyond a reasonable doubt." *United States v. Warner*, 5 Cir., 1971, 441 F.2d 821, 825. *See United States v. Franklin*, 5 Cir., 1978, 586 F.2d 560, 567.

Finally, Noll asserts that he was unconstitutionally penalized for asserting his innocence and exercising his right to stand trial, since he was sentenced to three years in prison, while codefendant Dennis Witt, who pleaded guilty, received only two years' probation. Absent an illegal sentence or a gross abuse of the trial judge's broad discretion, we will not disturb a sentence on appeal. *See United States v. Gray*, 5 Cir., 1977, 565 F.2d 881; *United States v. Haynes*, 5 Cir., 1977, 554 F.2d 231. Noll's sentence is within the statutory maximum and he has not alleged facts that would constitute an abuse of the district court's discretion. Accordingly, we reject his last contention and affirm the conviction.

AFFIRMED.