**UNITED STATES of America,
Plaintiff-Appellee,**

**v.**

**William Timothy CHANEY, a/k/a "James Kirk," a/k/a "James Baron," Defendant-Appellant.**

**No. 80–5434.**

United States Court of Appeals,
Fifth Circuit.*
Unit B

Dec. 7, 1981.

* Former Fifth Circuit case, Section 9(1) of Public Law 96–452—October 14, 1980.

Theodore Klein, Miami, Fla., pro se.

Sanford Svetcov, Chief, Asst. U.S. Atty., San Francisco, Cal., for plaintiff-appellee.

Before RIVES, KRAVITCH and ANDERSON, Circuit Judges.

KRAVITCH, Circuit Judge:

This appeal arises out of a jury verdict finding the appellant, William Timothy Chaney, guilty on seven counts of mail fraud in violation of 18 U.S.C. § 1342 and one count of interstate transportation of stolen property in violation of 18 U.S.C. § 2314.[1] Appellant claims that he was denied a fair trial because the trial court (1) inquired into the appellant's waiver of counsel in the presence of the entire jury venire; (2) admitted hearsay evidence of an alleged co-conspirator although there was no independent evidence of the existence of such a conspiracy and gave a conspiracy instruction in support of the evidence at the close of the case although the appellant was never charged with conspiracy; (3) required the appellant to furnish handwriting exemplars subsequent to his indictment; and (4) excluded certain evidence offered by the appellant. Because we find these claims meritless, we affirm the conviction.

*Facts*

Appellant, his wife, and brother were officers of a company called Western Vending or Western Distributing, Inc. (hereafter Western Distributing), which was located in Foster City, California. The appellant was president of Western Distributing and used the name "James Kirk." The brother and wife also used aliases: Cathleen Chaney called herself "Lisa Kirk," and Michael Chaney assumed various names, including "Wayne Harrington."

The alleged purpose of Western Distributing was to merchandise consumer products; however, Western Distributing actually served as part of a plan to defraud companies of goods provided to Western Distributing on credit. Appellant's scheme began when he sent letters on Western Distributing stationery, signed in the name of "Kirk," to numerous manufacturers of consumer goods. The letter explained Western Distributing's merchandising plan and the company's desire to purchase goods for resale on credit. In soliciting this business, appellant not only used a false name, but also made misrepresentations concerning Western Distributing's financial and credit status. The appellant listed "Ira Goldberg" and "Goldberg Distributing Company" as credit references. In fact "Ira Goldberg" was a fictitious character created by the appellant to transmit false credit information.[2] Many of the companies, rely-

---

1. Appellant was sentenced to concurrent two-year prison terms on the seven mail fraud counts, a consecutive two-year term on the interstate transportation of stolen property count, and a fine of $3,000.

2. The "Goldberg" telephone number provided by the appellant was actually subscribed to by Chaney. Many of the companies defrauded by the appellant called this number and received

ing on these misrepresentations, sold large quantities of merchandise and extended credit to Western Distributing. The merchandise included such items as C.B. radios, vacuum cleaners, calculators, stereo equipment, and typewriters.

In June 1977, Chaney vacated the Western Distributing office, as well as his home, and left town. Approximately $240,000 worth of goods, which had not been paid for, disappeared from the Western Distributing warehouse at that time. Companies that had sold merchandise to Western Distributing were not advised of the appellant's whereabouts; however, they were informed by a letter from Western Distributing, which was signed by "Kirk," that the company had suffered "a severe financial reversal" and that they would hear from Western Distributing within the next 45 days. The companies never heard from Western Distributing and never received payment for the goods.

Appellant's scheme was foiled a few months later in Fort Lauderdale, Florida. Acting under the alias "James Baron," the appellant advertised the sale of certain consumer products. Investigators found that one of the items sold by "Baron" was a typewriter that had initially been sold on credit by IBM to Western Distributing. Subsequently, a search warrant for "Baron's" Fort Lauderdale home was obtained. The execution of the warrant revealed a

number of items that had been sold to Western Distributing. Police then conducted a consent search of a warehouse in Pompano Beach that had been leased by the appellant and found a large quantity of merchandise fraudulently obtained by the appellant in California.

The appellant was subsequently arrested and indicted on several counts of mail fraud and one count of interstate transportation of stolen property. He chose to proceed at trial pro se with the aid of an assistant public defender. The jury found the appellant guilty as charged.

*Issues of Law*

Appellant first claims that he was denied a fair trial because the trial court inquired into the appellant's waiver of counsel in front of the entire jury venire. The appellant does not assert that the judge's comments would have been improper had they been made outside of the jury's presence; rather he argues that the colloquy unfairly prejudiced the jury against him and denied him effective assistance of counsel by destroying his credibility before the jury. At trial, the appellant did not timely object to the waiver hearing being conducted in the presence of the jury venire[3] or ask for a curative instruction. Therefore, we can reverse the trial court only if we find that the trial judge's actions constituted plain error.[4] Fed.R.Crim.P.

false credit information favorable to Western Distributing.

3. During the trial, the appellant asked that it be noted for the record that he takes exception to the judge holding the waiver hearing in the presence of the jury venire. This objection was made well after the waiver hearing had been conducted and therefore was untimely. *See* Fed.R.Crim.P. 51; *United States v. Perez*, 651 F.2d 268, 271 (5th Cir. 1981).

4. A defendant who chooses to proceed pro se is not entitled to special treatment on appeal. If a pro se defendant fails to properly preserve an issue for appeal, we will set aside the conviction only if the trial court committed plain error. The purpose of the plain error rule is to enforce the requirement that parties object to errors at trial in a timely manner so as to provide the trial judge an opportunity to avoid or correct any error, and thus avoid the costs of

reversal. The costs of permitting a defendant to raise an objection for the first time on appeal are the same whether defendant is represented by counsel or proceeds pro se. For an excellent discussion of these costs in a slightly different context, *see Wainwright v. Sykes*, 433 U.S. 72, 88–91, 97 S.Ct. 2497, 2507–08, 53 L.Ed.2d 594 (1977) (holding that if a defendant fails to raise a constitutional claim at the trial level as prescribed by the state, then the defendant is barred from federal habeas corpus review of that issue absent a showing of cause and prejudice). The fact that we treat defendants who proceed pro se exactly like those represented by counsel does not mean that we are unaware that pro se defendants are generally disadvantaged in the presentation of their defense. It is precisely because the courts recognize this shortcoming that trial judges are required to make sure that defendants understand the risks of proceeding pro se and that

52(b); *United States v. Cormier*, 639 F.2d 1177 (5th Cir. 1981); *United States v. Fowler*, 605 F.2d 181 (5th Cir. 1979). An error is plain if it is "so obvious that the failure to notice it would seriously affect the fairness, integrity, or public reputation of judicial proceedings." *United States v. Fowler, supra*, at 184 (quoting *United States v. Musquiz*, 445 F.2d 963, 966 (5th Cir. 1971)). And, such errors are recognized "only in exceptional circumstances to avoid a miscarriage of justice." *Easton v. United States*, 398 F.2d 485, 486 (5th Cir. 1968). Holding the waiver hearing in the presence of the jury venire did not in this case constitute a manifest miscarriage of justice.

 A criminal defendant has a constitutional right to represent himself. *Faretta v. California*, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975). However, because an accused who manages his own defense relinquishes many of the traditional benefits associated with the right to counsel, a trial judge must conduct a waiver hearing to make sure that the accused understands the risks of proceeding pro se and that he "knowingly and intelligently waives the right to counsel" before permitting the accused to proceed personally. *Id.* at 835, 95 S.Ct. at 2541; *Chapman v. United States*, 553 F.2d 886, 889 (5th Cir. 1977). Such a hearing should be conducted outside the presence of the jury to insure that it does not in any way prejudice the jury in favor of or against the defendant.[5]

 The trial judge in this case erred by holding the waiver hearing in front of the jury venire. However, close scrutiny of the record reveals that the colloquy was not conducted in a manner that seriously threatened the fairness or integrity of the judicial proceeding. First, the judge explained to the entire jury venire that the appellant had decided to represent himself with the assistance of the public defender.

Even if the waiver hearing had been conducted outside the presence of the jury, the jury would have been informed of the defendant's decision to proceed pro se. Second, the judge told the jury venire that before selecting the jury, he must discuss with the appellant his choice to represent himself. The judge explained to the appellant that the case was complicated, that a trained lawyer would aid with respect to the substance and procedure of the case and would better understand the proclivities of a jury, and that the defendant's inexperience might confuse the jury. He further informed the defendant that if the defendant failed to make objections during the course of the trial, those objections were waived, and that if the defendant chose to represent himself, he could not later appeal his conviction on the grounds of inadequate assistance of counsel. Finally, the judge asked the appellant to state for the record whether he knowingly, intelligently, and voluntarily waived his right to counsel; the appellant answered affirmatively. At no time during the colloquy did the judge discuss the merits of the case, criticize the defendant, or in any other way act in a manner that evidenced a bias against the defendant. Although the judge should have conducted the waiver hearing outside of the presence of the jury venire, we cannot say that his failure to do so in this case prejudiced the jury in such a way as to constitute plain error.

Appellant's second claim is two-fold: first, that the trial court erred by admitting hearsay statements of an alleged co-conspirator without sufficient independent evidence of the existence of a conspiracy; and second, that the trial court erred by giving the jury a conspiracy charge in support of the admission of such evidence even though the appellant was not indicted for conspiracy. In the court below, the appellant objected to the admission of the co-conspira-

---

they "knowingly and voluntarily" waive their right to counsel before permitting them to represent themselves. *Faretta v. California*, 422 U.S. 806, 835, 95 S.Ct. 2525, 2541, 45 L.Ed.2d 562 (1975); *Chapman v. United States*, 553 F.2d 886, 889 (5th Cir. 1977).

5. The American Bar Association has long recommended that trial judges conduct waiver of counsel hearings outside the presence of the jury. *See* A.B.A. Standards Relating to the Function of the Trial Judge, commentary to Section 6.6, at 86 (1972).

tor's statements on the grounds that the statements were prejudicial and that the appellant had not been charged with conspiracy. On appeal, the appellant abandons these contentions and instead argues that there was insufficient independent evidence of a conspiracy to admit the co-conspirator's statements. Because the appellant did not raise this claim below, we also review this claim under the plain error standard.

In *United States v. James*, 590 F.2d 575 (5th Cir. 1979) (en banc), we explained the two-prong test under Fed.R.Evid. 801(d)(2)(E) for admitting statements made by one member of a conspiracy against other members of a conspiracy. First, the trial judge must determine in the absence of the jury whether there is substantial, independent evidence of a conspiracy. Second,

> on appropriate motion at the conclusion of all the evidence, the court must determine as a factual matter whether the prosecution has shown by a preponderance of the evidence independent of the statement itself (1) that a conspiracy existed (2) that the co-conspirator and the defendant against whom the co-conspirator's statement is offered were members of the conspiracy, and (3) that the statement was made during the course and in the furtherance of the conspiracy.

*Id.* at 582; *United States v. Gray*, 659 F.2d 1296 (5th Cir. 1981). This procedure places the responsibility for determining the admissibility of a statement by an alleged co-conspirator solely with the trial judge.[6]

In this case, before the government solicited testimony regarding statements made by the appellant's brother, the government made an offer of proof to the trial judge outside the presence of the jury that the appellant and his brother were co-conspirators. The appellant did not at that time challenge the sufficiency of the government's offer of proof, and it is unclear from the record whether the trial judge actually reviewed the offered evidence to determine whether there was substantial independent evidence of a conspiracy or whether the judge merely accepted the propriety of the government's offer in the absence of an objection by the appellant. Even if the judge did not review the evidence, we cannot say that his failure to do so resulted in a miscarriage of justice as required by the plain error standard. In fact, after reviewing the evidence, we conclude that the appellant was not prejudiced by the admission of the brother's statements since substantial independent evidence of a conspiracy between the appellant and his brother was adduced at trial. By the time the government made its offer of proof of a conspiracy, the government had already introduced independent evidence that the appellant's brother, alias "Wayne Harrington," was often present at Western Distributing's office when the victims' salesmen telephoned or visited the office and that the appellant referred to "Harrington" as his business partner. It is thus clear that substantial independent evidence of a conspiracy initially existed to justify

---

**6.** Prior to our decision in *United States v. James*, 590 F.2d 575 (5th Cir. 1979) (en banc), we held that before admitting a co-conspirator's statement into evidence, it was the judge's role "to make a preliminary determination whether the government has presented sufficient evidence, independent of the hearsay itself, to support a finding by the jury that the declarant and the defendant against whom the statement is offered were members of that conspiracy." *Id.* at 578. *See, e. g., United States v. Apollo*, 476 F.2d 156 (5th Cir. 1973). If the judge was satisfied that this test had been met, then the judge instructed the jury, "both when the hearsay [was] introduced and at the final charge, that it may consider the hearsay against the defendant only if it first finds that the conspiracy existed, that the declarant and defendant were members of it, and that the statement was made during the course of and in furtherance of the conspiracy." *Id.* at 578. *See, e. g., United States v. Lawson*, 523 F.2d 804, 806 (5th Cir. 1976); *United States v. Fontenot*, 483 F.2d 315, 324–25 (5th Cir. 1973). In *James*, we reevaluated the relative roles of the judge and jury in deciding the trustworthiness of a co-conspirator's statement in light of the recently enacted Fed.R.Evid. 801(d)(2)(E). We concluded that Congress intended the judge and not the jury to decide the admissibility of such evidence and accordingly revised the test for admitting a co-conspirator's statement.

admitting the statements made by appellant's brother. Moreover, by the close of the government's case, further independent evidence established that (1) appellant admitted that his brother used the name "Wayne Harrington" and acted as vice president of Western Distributing; (2) appellant told the F.B.I. that he and his brother transported the merchandise from California to Florida; (3) records of the truck-rental company were signed by the appellant's brother; (4) the truck-rental dealer had identified a photograph of the appellant's brother as "Wayne Harrington," a representative of Western Distributing; and (5) "Wayne Harrington's" driver's license and business card were found at the appellant's residence. Even if substantial independent evidence had not been presented at the time the trial judge admitted the co-conspirator's statements, by the close of the government's case sufficient independent evidence of a conspiracy had been introduced to support the admission of the evidence. The appellant was therefore in no way prejudiced. Accordingly, we find that the trial judge did not commit plain error.[7]

■■■■■ The appellant also contends that the judge erred by giving the jury a conspiracy instruction when the appellant was not charged with conspiracy. He argues that the instruction was prejudicial because it conveyed to the jury the "sinister connotations of a conspiracy" and because it confused the jury as to the crimes with which the appellant was charged. But the judge did not instruct the jury that it could find the appellant guilty of conspiracy;[8] instead, the judge explained to the jury that it could consider a co-conspirator's statement only if it found that a conspiracy in fact existed, that the defendant was a member of the conspiracy, and that the statements in question were made in furtherance of the conspiracy. Prior to our decision in *United States v. James, supra,* this was the proper procedure for permitting a jury to consider such evidence; however, in *James,* we held that the admissibility of a co-conspirator's statement under Fed.R.Evid. 801(d)(2)(E) was exclusively a question for the judge. *See* note 5 *supra.* The judge therefore erred by permitting the jury to consider the admissibility question. However, as we noted in *United States v. Noll,* 600 F.2d 1123 (5th Cir. 1979), when a jury is instructed about the admissibility of a co-conspirator's statements, the government is essentially "required to demonstrate twice the admissibility of the [evidence], once to the court ... and once to the jury ...." *Id.* at 1128. The appellant, having been given two bites at the apple, was afforded greater protection than required under *James* and therefore was not prejudiced by the instruction.[9]

7. At the close of the evidence, the appellant did not request that the trial court determine whether the prosecution had satisfied the second prong of the *James* test by establishing by a preponderance of the evidence that a conspiracy existed, that Michael Chaney and the appellant were co-conspirators, and that the statements were made in the furtherance of the conspiracy. If the appellant had so moved and if the trial judge had ruled the prosecution met its burden, we could not say that the judge had abused his discretion. And, in light of the evidence of a conspiracy, the judge clearly did not commit plain error by permitting the jury to consider the evidence.

8. Appellant argues that this case is controlled by our decision in *United States v. Carroll,* 582 F.2d 942 (5th Cir. 1978). In *Carroll,* we held that the district court committed plain error by instructing the jury that defendant had been charged with a particular count of conspiracy for which he had never been indicted. In the case *sub judice,* no such instruction was given; the district court instructed the jury on the admissibility of a co-conspirator's statement and not on the substantive offense of conspiracy. *United States v. Carroll, supra,* is therefore inapposite and does not control the disposition of this case.

9. We do not hold that an instruction to the jury on the admissibility of a co-conspirator's statements can never constitute reversible error. In some cases the prejudicial effect of such an instruction might so outweigh the additional protection afforded a defendant that it would be necessary to set aside a conviction. Such is not the case here.

Appellant's third claim is that the court erred by requiring the appellant to furnish handwriting exemplars subsequent to the indictment in violation of the Federal Rules of Criminal Procedure. The appellant does not specify the rule that was violated, and we are unable to find one. Nor did appellant have a constitutional right to refuse to provide the handwriting exemplar. It is well settled that the taking of handwriting exemplars does not violate a defendant's fifth amendment right against self-incrimination. *United States v. Euge*, 444 U.S. 707, 100 S.Ct. 874, 63 L.Ed.2d 141 (1980); *Gilbert v. State of California*, 388 U.S. 263, 266, 87 S.Ct. 1951, 1953, 18 L.Ed.2d 1178 (1967); *United States v. McGann*, 431 F.2d 1104, 1108 (5th Cir.), *cert. denied*, 401 U.S. 919, 91 S.Ct. 904, 27 L.Ed.2d 821 (1970); *Higgins v. Wainwright*, 424 F.2d 177 (5th Cir.), *cert. denied*, 400 U.S. 905, 91 S.Ct. 145, 27 L.Ed.2d 142 (1970). This is so whether the handwriting exemplar is taken before or after indictment. Appellant's claim is therefore meritless.

The final claim raised by the appellant is that the district court erred by excluding as evidence a corporate resolution offered by the appellant purportedly showing a credit agreement between the appellant and "Ira Goldberg." When appellant attempted to introduce the resolution at trial the government objected on the grounds that the resolution was irrelevant, was hearsay, and had not been furnished to the government pursuant to a standing discovery order. The trial court sustained the objection on the latter two grounds.[10]

At trial, the appellant urged the court to admit the resolution for the truth of its contents under the general hearsay exception contained in Fed.R.Evid. 803(24).[11] The appellant does not renew this contention on appeal but instead argues that the evidence was not hearsay and should have been admitted because it was introduced to show only that the appellant relied on the resolution and not to establish the truth of its contents. Since this argument was not raised below, we will consider it only if a refusal to do so would result in a miscarriage of justice. *Martinez v. Mathews*, 544 F.2d 1233, 1237 (5th Cir. 1976). Such is not the case here as the trial judge properly exercised his discretion in excluding the resolution as hearsay.

AFFIRMED.

---

10. Since we find that the trial court's exclusion of the evidence on the grounds of hearsay did not constitute reversible error, we do not reach the issue of whether refusing to admit otherwise admissible evidence is a proper sanction for failing to comply with a standing discovery order. *See United States v. Davis*, 639 F.2d 239, 243 (5th Cir. 1981).

11. Under Fed.R.Evid. 803(24), a statement not specifically covered by any of the other exceptions contained in Rule 803 but having equivalent circumstantial guarantees of trustworthiness is excluded from the hearsay rule, even though the declarant is available as a witness, if the court determines that (A) the statement is offered as evidence of a material fact; (B) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and (C) the general purposes of these rules and the interests of justice will best be served by admission of the statement into evidence. However, a statement may not be admitted under this exception unless the proponent of it makes known to the adverse party sufficiently in advance of the trial or hearing to provide the adverse party with a fair opportunity to prepare to meet it, his intention to offer the

statement and the particulars of it, including the name and address of the declarant.

* Former Fifth Circuit case, Section 9(1) of Public Law 96–452—October 14, 1980.