540 So.2d 668 (1988)
Ex parte Phillip Wayne TOMLIN.
(Re Phillip Wayne Tomlin v. State).
85-1110.
Supreme Court of Alabama.
September 23, 1988.
As Corrected on Denial of Third Application for Rehearing December 2, 1988.
*669 Richard G. Alexander of Alexander & Knizley and Winn S.L. Faulk, Mobile, for petitioner.
Don Siegelman, Atty. Gen., and Joseph G.L. Marston III, Asst. Atty. Gen., for respondent.

ON SECOND APPLICATION FOR REHEARING
PER CURIAM.
The petitioner was convicted of murder and was sentenced to death. He complains that improprieties occurred during the trial. During the closing arguments, the prosecutor made comments on such matters as the defendant's not calling his wife and father as witnesses, and why the jury was given the case. In addition, he contends it was error to introduce the clothing the victims had worn at the time of their death, photographs of the victims' bodies, and love letters of the victims that were found at the scene of the killings.
We reverse, based upon the improper closing argument.[1]
In the present case, the prosecutor, in his closing argument, stated:
"The police have done a great job. We have brought the case in here to you. The reason you're still here is because the Judge said we had enough evidence for you to vote on. Now you have to do the duty that you are charged with."
No objection was made. In Adkins v. State, 38 Ala.App. 659, 93 So.2d 519 (1956), cert. denied, the following appeared in the record:
"By Mr. Wallace: We object to the statement of the Solicitor that if the State had not made out a case the court would have taken it from the jury, and ask the court to instruct the jury that is improper."
38 Ala.App. at 661, 93 So.2d at 521. The objection was overruled by the trial court. The Adkins court, in holding that the statement by the prosecutor was prejudicial, cited Annot., 127 A.L.R. 357, 362 (1940), which stated:
"Statements by the prosecuting attorney alluding to the fact that the trial court would have taken the case from the jury if the evidence against the defendant was not sufficient, or referring to the fact that the court had overruled a *670 motion for a directed verdict for the defendant as establishing the sufficiency of the evidence against the defendant, or similar statements, have been held to constitute reversible error."
Adkins, 38 Ala.App. at 661, 93 So.2d at 521; Wideman v. State, 40 Ala.App. 5, 110 So.2d 295 (1957), aff'd on other grounds, 269 Ala. 49, 110 So.2d 298 (1959) (prosecutor implied that trial judge, by allowing case to go to the jury, believed defendant guilty); Annot., 90 A.L.R.3d 822 (1979); 75 Am.Jur.2d Trial, § 264 (1974); see Thompson v. State, 235 So.2d 354 (Fla.Dist.Ct. App.1970) cert. denied, 239 So.2d 828 (Fla. 1970); Washington v. State, 80 Ga.App. 415, 56 S.E.2d 119 (1949). The court in Adkins concluded that the argument of the solicitor was improper and that the trial court, by its ruling, approved and sanctioned the statement of the prosecuting attorney.
In the present case, the statement of the prosecutor is substantially similar to the one made in the Adkins case. The only distinction that can really be made between Adkins and this case is that in the present case no objection was made, and, therefore, the judge did not rule as to the impropriety of the comment. While no objection was made, we still must review the record for error, because this is a capital case. A.R. App.P. 39(k); Ex parte Kennedy, 472 So.2d 1106 (Ala.1985), cert. denied, Kennedy v. Alabama, 474 U.S. 975, 106 S.Ct. 340, 88 L.Ed.2d 325 (1985).
Based on Adkins, we must conclude that the comment by the prosecutor in the present case was error. We will take appropriate appellate action whenever an error "has or probably has adversely affected the substantial rights of the petitioner." A.R.App.P. 39(k); Ex parte Kennedy, 472 So.2d 1106 (Ala.1985), cert. denied, Kennedy v. Alabama, 474 U.S. 975, 106 S.Ct. 340, 88 L.Ed.2d 325 (1985). The second issue presented is whether the prosecutor, in his closing argument, made improper comments about the defendant's wife's not testifying. At common law one spouse was incompetent to testify either for or against the other. Holyfield v. State, 365 So.2d 108 (Ala.Crim.App.), cert. denied, 365 So.2d 112 (Ala.1978). Code 1975, § 12-21-227, has modified the common law by providing that a spouse may elect to so testify. The spouse becomes competent only after he or she has elected to testify. See, Arnold v. State, 353 So.2d 524 (Ala.1977); Holyfield v. State, 365 So.2d 108 (Ala.Crim.App.), cert. denied, 365 So.2d 112 (Ala.1978). Therefore, it is error for the prosecutor to draw an adverse inference from a defendant's failure to call his or her spouse. Ex parte Billingsley, 402 So.2d 1060 (Ala. 1981). See Ferry v. State, 161 Ga.App. 795, 287 S.E.2d 732 (1982); Turnage v. State, 216 Miss. 813, 63 So.2d 220 (1953); State v. Thompson, 290 N.C. 431, 226 S.E. 2d 487 (1976).
The prosecutor made the following comments in his closing arguments:
1. "We cannot call the defendant's wife to the witness stand. She has what we call a husband and wife privilege, and we cannot make her testify."
2. [a] "And the reason that that was important, as I have explained to you, is that we cannot call the wife of the defendant to the stand."
"And [b] do you all find it a little strange that Mrs. Tomlin didn't show up until after we brought Mrs. Daniels here?"
"I find it somewhat strange that she didn't even show her face in this courtroom until after Mary Daniels came in here."
3. "And we cannot make the defendant's wife take the stand.
"They can call her. They can call her and she can take this stand and tell you anything she wants voluntarily, but the State of Alabama can't call her. So we've got to work the other way. We can bring Mary Daniels, because her husband's not on trial today, and the Judge can make sure that you hear her testimony...."
The State attempts to explain the prosecutor's first two statements as not drawing an adverse inference from the defendant's wife's not testifying. In regard to the first statement quoted above, the attorney general *671 contends that the prosecutor's comments were proper because he was simply stating why the prosecution did not call Mrs. Tomlin to the stand. Even if his statement is a correct reason for explaining why he could not call Tomlin's wife to the stand, the fact is that the jury could have easily and logically thought, on the basis of the prosecutor's statement, that the reason the defendant's wife did not testify was because she knew something about the murder that could implicate her husband. Therefore, regardless of the prosecutor's intent, an adverse inference could be drawn from his informing the jury of the wife's election not to testify. The State's explanation of the prosecutor's reason for calling attention to the fact that he could not call Mrs. Tomlin does not justify his comment.
In the second statement, the State breaks up the argument into parts "a" and "b." The State argues that part "a" was simply a comment by the prosecutor, directed to the jury, indicating that he was forced to use Mrs. Tomlin's statements to the police instead of her actual testimony. Again, the inference to be drawn is that Mrs. Tomlin did not testify because she did not want to give testimony that would harm her husband.
As to part "b," which directly followed part "a," the State argues that the prosecutor's statement"And do you all find it a little strange that Mrs. Tomlin didn't show up until after we brought Mrs. Daniels here? I find it somewhat strange that she didn't even show her face in the courtroom until after Mary Daniels came in here" was only a comment countering the sympathy argument that defendant was implicitly making through courtroom theatrics and, therefore, was not error.
We cannot agree with these arguments. The statement about Mrs. Tomlin's not testifying and the statement that it was strange when she showed up in the courtroom were made in close proximity to each other. A logical inference to be drawn from these particular comments is that Mrs. Tomlin was afraid that Mary Daniels was going to reveal information implicating her husband, information that she was aware of because they were together while their husbands were away around the time of the murder. Again, the implication from the entire set of related statements is that Mrs. Tomlin was not testifying because she knew something that would implicate her husband in the murders.
As to the third statement quoted above, the attorney general admits that this is arguably error under Ex parte Billingsley, supra. That statement was made almost immediately after the second statement. Because the second and third statements were made so close together, and the State admits to the adverse inference that could be drawn from the third statement, this proximity gives credibility to the idea that the second statement could also easily be interpreted as drawing an adverse inference about the appellant's wife's not testifying.
In the end the State essentially contends that these statements are not plain error because: 1) the evidence was very strong; 2) Billingsley was decided three years after the present case was tried; 3) the defense attorney did not object; and 4) Mrs. Tomlin could not have shed light on any disputed matter in this case.
The fact that Billingsley was decided three years after this case was tried does not mitigate the prosecutor's error. Had Billingsley been decided before the trial of this case, the defendant's counsel may have been more inclined to object. Under Rule 39(k), we must review error even though no objection was raised, and it is irrelevant in this case that Mrs. Tomlin could not have shed any light on a disputed matter; the jury still could have inferred from the prosecutor's statements that she knew something about the murder and that this was the reason she did not testify.
Our decision must rest on a determination of whether the prosecutor's closing arguments about the reason for the judge's allowing the case to go to the jury and his arguments about the failure of the wife to testify amounted to prosecutorial error that adversely affected the substantial rights of the appellant. The evidence in *672 the present case is all circumstantial. By the State's own admission, "the State's case was such a perfect assembly of circumstantial evidence that, if any substantial part of it were rejected, it would make it difficult, if not impossible to accept the remainder." While there was strong circumstantial evidence against the appellant, there was no direct evidence. In addition, the existence of overwhelming evidence is not the sole determinative factor in deciding if prejudice results. Ex parte Johnson, 507 So.2d 1351 (Ala.1986).
We must conclude, based on Billingsley and Adkins, that errors did occur. Rule 39(k), A.R.App.P., provides that this Court will take appropriate action whenever a plain error or defect "has or probably has adversely affected the substantial rights of the petitioner." We have interpreted Rule 39(k) to mean that plain error is reversible error only "`if the error is so obvious that the failure to notice it would seriously affect the fairness or integrity of the judicial proceedings.'" Ex parte Womack, 435 So.2d 766 (Ala.1983), quoting United States v. Chaney, 662 F.2d 1148, 1152 (5th Cir.1981); Ex parte Harrell, 470 So.2d 1309 (Ala.1985). We need not decide whether either of the two errors, standing alone, would require a reversal; we hold that the cumulative effect of the errors probably adversely affected the substantial rights of the defendant and seriously affected the fairness and integrity of the judicial proceedings. See Blue v. State, 246 Ala. 73, 80, 19 So.2d 11, 16-17 (1944); Jetton v. State, 435 So.2d 167 (Ala.Crim. App.1983).
The judgment of the Court of Criminal Appeals affirming the conviction must be reversed.
APPLICATION GRANTED; REVERSED AND REMANDED.
TORBERT, C.J., and JONES, SHORES, BEATTY, ADAMS and HOUSTON, JJ., concur.
MADDOX, J., dissents.
MADDOX, Justice (dissenting).
Because I believe Tomlin was given a fair trial, though not a perfect one, I dissent.
"`[A] defendant is entitled to a fair trial but not a perfect one,' for there are no perfect trials." Brown v. United States, 411 U.S. 223, 231-32, 93 S.Ct. 1565, 1570-71, 36 L.Ed.2d 208 (1973) (quoting Bruton v. United States, 391 U.S. 123, 135, 88 S.Ct. 1620, 1627, 20 L.Ed.2d 476 (1968)). I believe that the prosecutor's closing argument was not unduly prejudicial and that Tomlin received a fair trial.
This case was initially tried on March 20, 1978. The Court of Criminal Appeals affirmed Tomlin's conviction on November 20, 1979, but remanded the case for corrections of deficiencies in the sentencing order. This Court reversed and remanded on the authority of Beck v. Alabama, 447 U.S. 625, 100 S.Ct. 2382, 65 L.Ed.2d 392 (1980), but on rehearing, we affirmed the Court of Criminal Appeals' judgment. Ex parte Tomlin, 443 So.2d 59 (Ala.1983). The United States Supreme Court denied Tomlin's petition for a writ of certiorari on April 23, 1984. The trial court entered a new sentencing order, and Tomlin initiated another appeal. This Court's latest opinion affirming Tomlin's conviction was issued on June 5, 1987, and appears at 516 So.2d 797.
At the time the case was tried and appealed, this Court did not require that arguments of counsel be recorded and transcribed and included in the record on appeal. Temporary Rule 21(a), Ala.R. Crim.P., which requires that the arguments of counsel be recorded and transcribed in capital cases, did not become effective until September 1, 1987.
Therefore, I would not apply the "plain error" doctrine for two reasons: 1) the objectionable matter was not in the record originally, and 2) in this case, the error was not unduly prejudicial. Rule 45, Ala.R. App.P.

ON THIRD APPLICATION FOR REHEARING
PER CURIAM.
APPLICATION OVERRULED; OPINION MODIFIED.
*673 TORBERT, C.J., and JONES, SHORES, BEATTY, ADAMS and HOUSTON, JJ., concur.
MADDOX and STEAGALL, JJ., dissent.
MADDOX, Justice (dissenting).
On application for rehearing, the State asks this Court to modify its opinion with respect to the standard for determining "prejudice" in the context of the "plain error" rule. The State's position is that a greater showing of prejudice must be made in order for error to be reversible under the "plain error" rule. In Ex parte Harrell, 470 So.2d 1309, 1313 (Ala.1985), an opinion authored by this Justice, this Court quoted from Ex parte Womack, 435 So.2d 766, 769 (Ala.1983):
"`The State argues that this was not "plain error" because the petitioner himself never indicated any reliance on such a defense; that is, instead of defending on the basis that he had no intent to kill but only to rob, his defense was alibi: he denied being present and denied any knowledge of the crime. Consequently, the State argues, and we agree, that the failure to charge the matter referred to above was not a "particularly egregious error" and would not result in a miscarriage of justice if a reversal was denied. That position follows United States v. Frady, 456 U.S. 152, 102 S.Ct. 1584, 1592, 71 L.Ed.2d 816 (1982), and the federal "plain error" rule as stated in United States v. Chaney, 662 F.2d 1148, 1152 (5th Cir.1981): "`Plain error' only arises if the error is so obvious that the failure to notice it would seriously affect the fairness or integrity of the judicial proceedings." In that case the court found no "plain error" in an evidentiary ruling after the defendants had failed during trial to assert a theory later argued on appeal. See also Rule 45A, A.R.A.P.'"
I would grant rehearing because the standard for "plain error" set out in Womack and Harrell and in the federal case of United States v. Chaney, should be applied in this case. In my opinion, a good standard would be to make the "plain error" rule consistent with the "but for" test put forth in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Tomlin is basically arguing that his attorney rendered ineffective assistance when he failed to object to the prosecutor's remarks.
The United States Supreme Court said in Strickland:
"Taking the unaffected findings as a given, and taking due account of the effect of the errors on the remaining findings, a court making the prejudice inquiry must ask if the defendant has met the burden of showing that the decision reached would reasonably likely have been different absent the errors." 466 U.S. at 696, 104 S.Ct. 2052.
Similarly, our "plain error" rule should not require the reversal of a conviction unless the defendant can show that there is a reasonable likelihood that the decision at trial would have been different absent the errors. I do not believe that there is a reasonable likelihood that the result of Tomlin's trial would have been different if his counsel had objected to the prosecutor's remarks and the trial judge had sustained that objection. Thus, those remarks and Tomlin's attorney's failure to object to them were not "plain error" in my opinion.
The majority, on application for rehearing, has modified the original opinion to adopt the federal "plain error" rule set out in Chaney, 662 F.2d 1148 (5th Cir.1981), and concludes that the "cumulative effect of the errors probably adversely affected the substantial rights of the defendant and seriously affected the fairness and integrity of the judicial proceedings." I totally disagree.
Is it reasonable to assume that the jury verdict would have been different absent the error? No. I continue to dissent.
I believe the majority has erred and should grant rehearing, withdraw the opinion, and affirm. Consequently, I dissent.
STEAGALL, J., concurs.
NOTES
[1] It should be noted that the matters referred to in this opinion which require reversal were not before the court when the case was originally affirmed. See Ex parte Tomlin, 516 So.2d 797 (Ala.1987).