820 So.2d 883 (2001)
Ex parte James Allen JOHNSON.
(Re James Allen Johnson v. State).
1991943.
Supreme Court of Alabama.
September 7, 2001.
Rehearing Denied November 2, 2001.
Donald L. Colee, Jr., Birmingham; and William Bradford of Gorham & Waldrep, Birmingham, for petitioner.
Bill Pryor, atty. gen., and James R. Houts, asst. atty. gen., for respondent.
STUART, Justice.[1]
James Allen Johnson was convicted of murder made capital because it was committed during the course of a robbery, see § 13A-5-40(a)(2), Ala.Code 1975. The jury, by a vote of 10-2, recommended that Johnson be sentenced to death. The trial court accepted the jury's recommendation and sentenced Johnson to death. The Court of Criminal Appeals affirmed the conviction and the sentence. Johnson v. *884 State, 820 So.2d 842 (Ala.Crim.App.2000). We granted certiorari review.
For a recitation of the facts, see Johnson v. State, 820 So.2d at 849-50.
In his petition, Johnson raises 22 issues for this Court to review. The Court of Criminal Appeals' extensive opinion thoroughly addressed these issues. This Court has also considered these issues and finds no error.
Pursuant to § 13A-5-53, Ala.Code 1975, this Court has considered the propriety of the death sentence. The trial court found the existence of one statutory aggravating circumstances:
"(1) The capital offense was committed while the defendant was engaged ... in the commission of, or an attempt to commit, the crime of robbery. [See § 13A-5-49(2), Ala.Code 1975.]"
The trial court found the existence of one statutory mitigating circumstance: "(1) Defendant has no significant history of prior criminal activity, [see § 13A-5-51(1), Ala.Code 1975]." The trial court did not find the existence of any nonstatutory mitigating circumstances.
The record reflects that the trial court weighed the aggravating circumstance against the statutory mitigating circumstance and found that the aggravating circumstance greatly outweighed the mitigating circumstance and sentenced Johnson to death.
After carefully reviewing the record, this Court has found no evidence to indicate that Johnson's sentence of death "was imposed under the influence of passion, prejudice, or any other arbitrary factor." See § 13A-5-53(b)(1), Ala.Code 1975. This Court, pursuant to § 13A-5-53(b)(2), has independently weighed the aggravating circumstance and the statutory mitigating circumstance the trial court found to exist to determine the propriety of Johnson's sentence of death. After that independent weighing, this Court concludes that death is the appropriate sentence in this case. Johnson's sentence is not disproportionate or excessive when compared to the sentences imposed in similar capital cases.
The judgment of the Court of Criminal Appeals affirming Johnson's conviction and sentence of death is affirmed.
AFFIRMED.
MOORE, C.J., and HOUSTON, SEE, LYONS, BROWN, HARWOOD, and WOODALL, JJ., concur.
JOHNSTONE, J., concurs in the result.
JOHNSTONE, Justice (concurring in the result).
I concur only in the result. The main opinion of this Court depends on the rationale of the Court of Criminal Appeals in the case now before us on certiorari review. Several aspects of the opinion of the Court of Criminal Appeals, Johnson v. State, 820 So.2d 842 (Ala.Crim.App.2000), are questionable.
First, the trial judge's denial of Johnson's challenge for cause against prospective juror R.L. is questionable. As the Court of Criminal Appeals acknowledges in Part II of its opinion, "R.L .... indicated that he thought that a sentence of life imprisonment without parole was a `waste of the taxpayers' money.'" 820 So.2d at 853. The prosecutor's "rehabilitation" of R.L. consisted of two entirely leading questions answered only with, respectively, first, the statement, "No, I mean, like I say," and, second, a mere affirmative nod. 820 So.2d at 854. Denials of defendants' challenges for cause against obviously prejudiced prospective jurors are common in the capital cases we review. Each such *885 ruling threatens the fairness of the trial from the very beginning. Capital cases are usually so much better investigated and prepared than noncapital cases and so much more compelling to the jurors, that the State usually does not need the assistance of biased jurors to win convictions. Regardless of the needs of the State in this regard, however, the trial courts owe their most urgent duty to ensure fair trials in these cases; and trial courts usually have an abundance of prospective jurors available for jury selection. Unfortunately, appellate review of these rulings is so lax that the appellate courts are encouraging an ever greater number of such questionable rulings.
In Part V of its opinion, the Court of Criminal Appeals endorses the inequality of authorizing the State to grant leniency or immunity to a witness in return for his or her testimony but not providing any such right to the defendant. These deals corrupt our trials as much as, or more than, bribing witnesses with money, because, generally, sparing all or part of a witness's life is worth more than money to the witness. Although these deals are always couched in the ethical terms that the State will grant the leniency or the immunity in return for "truthful testimony," the practical definition of "truthful testimony" is always testimony which incriminates the defendant on the charge being tried. Otherwise, the State will not make the deal. Most people offered an opportunity to save all or part of their own lives by "testifying truthfully" will adopt the theory of the prosecution as soon as it is disclosed. Commonly the witnesses offered these deals are the most corruptible members of our society. If, on the other hand, the device of offering liberty or life itself in return for testimony is a legitimate engine for marshaling the truth, then authorizing the device for the State but denying it to a defendant who demonstrates that the "truth" is that he is innocent according to a witness who will not testify without a deal, would seem so unfair as to constitute a denial of due process of law.
Finally, Part XX of the opinion by the Court of Criminal Appeals cites a precedent by that same Court for the proposition that, "We have held that when no one instance amounts to reversible error, the cumulative effect can be no greater." This statement is an erroneous rejection of the cumulative error doctrine adopted by this Court. In footnote 1 of Ex parte Woods, 789 So.2d 941 (Ala.2001), this Court stated:
"A correct statement of the law would be that, when no one instance amounts to error at all (as distinguished from error not sufficiently prejudicial to be reversible), the cumulative effect cannot warrant reversal. In other words, multiple nonerrors obviously do not require reversal. The particular wording of the statement quoted here implies that multiple rulings that are, indeed, errors cannot cumulatively cause enough prejudice to require reversal unless at least one of the erroneous rulings is, in and of itself, sufficiently prejudicial to require reversal under Rule 45, Ala. R.App. P. The correct rule is that, while, under the facts of a particular case, no single error among multiple errors may be sufficiently prejudicial to require reversal under Rule 45, if the accumulated errors have `probably injuriously affected substantial rights of the parties,' then the cumulative effect of the errors may require reversal. See Rule 45, Ala. R.App. P.; see also Ex parte Tomlin, 540 So.2d 668, 672 (Ala.1988) (`We need not decide whether either of the two errors, standing alone, would require a reversal; we hold that the cumulative effect of the errors probably adversely affected the substantial rights of the defendant and seriously affected the fairness and integrity of the judicial proceedings. See Blue v. State, 246 Ala. 73, *886 80, 19 So.2d 11, 16-17 (1944); Jetton v. State, 435 So.2d 167 (Ala.Crim.App. 1983).'); McGriff v. State, [Ms. 97-0179, September 29, 2000] ___ So.2d ___, ___ (Ala.Crim.App.2000) (`Because we find no error in the specific instances alleged by the appellant, we find no cumulative error.' (Quoting earlier cases; emphasis added.)); United States v. Rivera, 900 F.2d 1462, 1470 (10th Cir.1990) (`A cumulative-error analysis merely aggregates all the errors that individually have been found to be harmless, and therefore not reversible, and it analyzes whether their cumulative effect on the outcome of the trial is such that collectively they can no longer be determined to be harmless.'); and United States v. Canales, 744 F.2d 413, 430 (5th Cir. 1984) (`We recognize that the cumulative effect of several incidents of improper argument or misconduct may require reversal, even though no single one of the incidents, considered alone, would warrant such a result.')."
NOTES
[1] This case was originally assigned to another Justice; it was reassigned to Justice Stuart on January 16, 2001.